# COMMONWEALTH OF PENNSYLVANIA et al.

### v.

# LOCAL UNION 542, INTERNATIONAL UNION OF OPERATING ENGINEERS, et al.

### Appeal of Abraham E. FREEDMAN, Esquire.

### Nos. 76–2266, 76–2470.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1976.

Decided Feb. 7, 1977.

---

Martin J. Vigderman, Charles Sovel, Freedman, Lorry, Vigderman, Weiner & Sovel, Philadelphia, Pa., for appellant.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Bonnie Brigance Leadbetter, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ROSENN, FORMAN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

These criminal contempt cases against an attorney require us to consider the sensitive distinctions between zealous representation of a client's interests and contumacious interference with the orderly progress of trial

court proceedings.[1] With full appreciation of the contentious role of trial counsel,[2] yet with due regard for the essential power of the trial court to function effectively,[3] we conclude that the courtroom conduct of the attorney in these cases far exceeded the limits of proper advocacy, and we affirm the orders of criminal contempt entered against him.

## I.

Abraham E. Freedman appeals from two orders of criminal contempt entered against him in the course of a continuing trial in the United States District Court for the Eastern District of Pennsylvania.[4] Both were summary citations imposed under Rule 42(a) of the Federal Rules of Criminal Procedure,[5] and the incidents giving rise to both orders were sufficiently similar for us to have the cases consolidated for expedited appeal. Because the issues raised in the two cases are not completely identical, however, we shall deal with each order separately.[6]

The incident underlying the first contempt order (No. 76–2266) occurred on September 28, 1976, the fifty-first day of a non-jury trial on a civil rights class action brought by the Commonwealth of Pennsylvania and certain named individuals against, *inter alia*, the local union repre-

sented by appellant Freedman. The complaint alleges that the defendants discriminate against minority group members "in the recruitment, apprenticeship, membership, training, upgrading, referral, and representation of men who work within the operating engineers['] craft . . . ."

Plaintiffs offered as a witness one Bennett O. Stalvey, Jr., who, as Area Coordinator and Regional Director of the Philadelphia Regional Office of the Office of Federal Contract Compliance, had executed an affidavit that was appended to the plaintiffs' complaint. Stalvey had stated in his affidavit that "serious questions concerning the availability of membership in, and the referral practices of, Local 542 led to the withholding of over 30 million dollars ($30,-000,000) in Federal funds from State highway construction from the spring of 1968 until the summer of that year . . . ." In cross-examining Stalvey, Attorney Freedman sought to introduce portions of a pretrial deposition in which Stalvey had stated, allegedly in contradiction of the affidavit, that he could not say that the funds had been withheld "because of Local 542's activity," but could say only that the union's activity had "led to" the withholding of funds. Freedman's method of cross-examining Stalvey about the alleged discrep-

---

1. *See Offutt v. United States*, 348 U.S. 11, 13, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *Sacher v. United States*, 343 U.S. 1, 13–14, 72 S.Ct. 451, 96 L.Ed. 717 (1952); R. Goldfarb, The Contempt Power 191–92 (1963).

2. *United States ex rel. Robson v. Oliver*, 470 F.2d 10, 12 (7th Cir. 1972); *In re Dellinger*, 461 F.2d 389, 397 (7th Cir. 1972). *See In re McConnell*, 370 U.S. 230, 237, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962) (Harlan, J., dissenting).

3. *United States v. Proffitt*, 498 F.2d 1124, 1129 (3d Cir.), *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974). *See United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).

4. After the first contempt order was imposed, Freedman moved this court to stay the proceedings in the district court until the disposition of the appeal from that order. This court denied the motion by order dated October 8, 1976.

5. Rule 42(a) provides:

   *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

   Rule 42 applies the contempt power defined in 18 U.S.C. § 401 (1970). That statute provides that a federal court has the power to punish by fine or imprisonment such contempt of its authority as "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." *See United States v. Wilson*, 421 U.S. 309, 315 n.6, 95 S.Ct. 1802, 1806, 44 L.Ed.2d 186 (1975); *United States v. Sacher*, 343 U.S. 1, 6–7, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

6. These orders are appealable under 28 U.S.C. § 1291 (1970). *See International Business Machines Corp. v. United States*, 493 F.2d 112, 114 (2d Cir. 1973), *cert. denied*, 416 U.S. 976, 94 S.Ct. 2378, 40 L.Ed.2d 756 (1974).

ancy consisted of the lawyer's reading an extensive portion of the affidavit verbatim to the witness.

After Mr. Freedman had quoted sixteen questions and sixteen answers from the deposition, opposing counsel objected that no inconsistency had been shown, and moved that "any reading exercises be stopped." The trial judge asked Freedman if he had anything specific to call to the witness's attention, and inquired how many more questions and answers Freedman intended to read from the deposition. "A couple more," Freedman responded. "Just to go over a couple more questions and answers," the judge said. "Then we will focus it. If we are talking about several questions being read, I am just going to ask you to show them to the witness, and we will identify them by pages."

Freedman proceeded to quote five more questions and answers. The judge then interrupted and addressed Freedman as follows:

I thought you were going to read a couple more questions. Apparently you are not. I will make my ruling on the basis of Mr. Goodman's [opposing counsel's] objection. I will sustain the objection of a random reading of notes of testimony on the deposition. If you ask the witness a question, and then if you follow up that question, with a specific reference in the transcript to which you claim there is a contradiction, I will permit it. But it is impossible to focus on a multi-phase series of questions in terms of cross-examination.

The following colloquy ensued:

Mr. Freedman: I object to Your Honor's characterization of my reading a deposition as random.

The Court: I made my ruling.

Mr. Freedman: I am making my objection to Your Honor's ruling, and I am going to state the reason for my objection. I don't think that Your Honor can stop me from doing that.

The Court: I am directing you not to state the basis of your objection. Whatever you have, as a matter of law, as a basis of your objection, you will be the beneficiary of. Now, we will just deter what I think is [an] irrational cross-examination process. So I have made my ruling.

Mr. Freedman: I am afraid I have to give the basis for my objection.

The Court: All right. You may disregard my direction. If you give the basis when I told you not to, I am going to send for the marshal and hold you in contempt.

Mr. Freedman: You can send for the marshal right now, because I am going to give the basis for my objection.

The Court: I am directing you, as an officer of this Court not to state the basis of your objection. Whatever basis you have, you will have the benefit of claiming it. And if you disregard that, I am going to hold you in contempt.

Mr. Freedman: What I have to say, I want to say, not only for Your Honor, but for the Appellate Court if there happens to be a review. I am going to state it.

The Court: Just wait a minute. We will take a five-minute recess. I will send for the marshal.

■ Following a brief recess, the judge warned Freedman twice more not to state the reason for the objection, and admonished him that he would consider a violation of his order to be criminal contempt. Freedman replied that he considered it his "responsibility under the law" to state the basis of his objection. After two more direct orders not to state the reason for his objection, and two more warnings that a violation of those orders would be considered criminal contempt, Freedman nevertheless proceeded to state the basis of his objection. He had been ordered a total of seven times not to do so; he had been specifically warned four times that if he disregarded the judge's ruling he would be held in criminal contempt.[7] The trial judge

7. The transcript of the proceedings following the recess is reproduced as Appendix A to this opinion.

thereupon held Freedman in contempt, and sentenced him to thirty days in prison.[8]

On appeal from this contempt order, Freedman urges that his conduct was necessary to protect the record. He contends that he acted in the good faith belief that his action was proper and therefore lacked any criminal intent, and that his conduct did not constitute an actual obstruction of justice.

## II.

■ Our analysis of the issues must commence with a recognition of the historic role of the bench and bar in our jurisprudential system. The American legal system contemplates both an independent, respected judiciary and an independent, vigorous bar. The system takes account of the basic need for the orderly administration of justice. Without order in a courtroom, justice may be empty and evanescent. A balance must be maintained, however, between the necessity for judicial power to curb obstruction of justice in the courtroom and the need for lawyers to present their clients' cases fairly, fearlessly, and strenuously. In preserving the balance, a court must not exercise its summary power of contempt to stifle courageous and zealous advocacy and

thereby impair the independence of the bar. On the other hand, the dignity, the independence, and the control of the court must not be degraded by lawyers who "equate contempt with courage . . . . [T]he processes of orderly trial, which [are] the supreme object of the lawyer's calling," must be protected. *Sacher v. United States*, 343 U.S. 1, 14, 72 S.Ct. 451, 457, 96 L.Ed. 717 (1952).

## A.

The appellant argues that the district judge erred in restricting the method of cross-examining witness Stalvey. In order to ensure the availability of appellate review of the judge's ruling, Freedman insists, he had to state the reasons for his exception to that ruling; otherwise the court of appeals might decline to consider a challenge to the assertedly erroneous limitation of cross-examination. In essence, Freedman submits that an attorney is free to violate a direct order of a trial judge if the lawyer believes that the protection of his client's interests on appeal requires such action. The appellant relies most heavily on two cases to support his position: *In re McConnell*, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962), and *Morrissey v. Na-*

8. The district court's Order, Findings, and Commitment of Contempt, entered 40 minutes after the incident described above, reads as follows:

> On the afternoon of Tuesday, September 28, 1976, Abraham E. Freedman, Esquire, as counsel for one of the defendants in the above-captioned case was specifically advised to refrain from stating the basis of certain objections on the record. He was advised that if he continued to state the *basis* of the objections, when his objection had already been noted, that he would be held in contempt. He refused to refrain from stating the basis of his objection, but instead continued to state the basis of his objection despite my admonishment. I find that this deliberate conduct constituted contempt in the actual presence of the Court and was in violation of Rule 42 of the Federal Rules of Criminal Procedure. He is sentenced to thirty days. He is granted the right upon the entry of this judgment to be on his own recognizance to challenge the validity of this order.
>     By the Court:
>     /s/ *A. Leon Higginbotham, Jr., J.*
>     Sept. 28, 1976     3:17 P.M.

Appellant does not contend that this order fails to meet the strict requirements of Fed.R. Crim.P. 42(a), note 5 *supra*. *See United States v. Schrimsher*, 493 F.2d 842, 844–45 (5th Cir. 1974). Although the district judge did not refer specifically to the pages of the trial transcript at which the incident occurred, his description of the event in question is sufficiently detailed to permit us to locate the relevant transcript pages. Accordingly, we have not limited our consideration to the facts as described in the order, but have looked to the transcript itself, which is a part of the record on appeal. *See In re Williams*, 509 F.2d 949, 952, 959 (2d Cir. 1975).

The district judge did not file an opinion with this order. He did file an opinion with his order denying Freedman's motion to stay the proceedings pending this appeal; that opinion describes the incident underlying the contempt order in considerably more detail than the contempt order itself. We do not and need not rely on the opinion in our consideration of the contempt order.

*tional Maritime Union,* 544 F.2d 19 (2d Cir. 1976).

*In re McConnell, supra,* concerned a lawyer who was summarily found guilty of criminal contempt for in-court statements made while representing the plaintiff in an antitrust suit. Plaintiff's counsel, forbidden by the trial judge from proving their conspiracy charge against the defendants, asked counsel for the defendants to stipulate that the plaintiff would have introduced certain evidence of conspiracy had it been allowed to do so. Defense counsel refused to stipulate, however, and instead insisted that plaintiff's counsel prepare their record by following the procedure set out in Rule 43(c) of the Federal Rules of Civil Procedure, which requires that before an offer of proof is made questions upon which the offer is based must first be asked in the presence of the jury. The Supreme Court gave this description of what ensued:

> Unwilling to risk dismissal of their appeal for failure to follow Rule 43(c), [McConnell] proceeded to produce and question witnesses in the presence of the jury in order to lay the proper foundation for their offers of proof of conspiracy. But during the process of this questioning the judge ordered it stopped and directed that any further offers of proof be made without first having asked questions of witnesses in the presence of the jury. This ruling placed [McConnell] in quite a dilemma because defense counsel was still insisting that all offers of proof be made in strict compliance with Rule 43(c) and there was no way of knowing with certainty whether the Court of Appeals would treat the trial court's order to dispense with questions before the jury as an excuse for failure to comply with the Rule. Petitioner therefore not only sought to make clear to the court that he thought defense counsel's objection was "right" but also repeatedly insisted that he be allowed to make his offers of proof in compliance with the Rule.

370 U.S. at 232, 82 S.Ct. at 1290 (footnotes omitted). McConnell advised the trial judge that "we have a right to ask the questions, and we propose to do so unless some bailiff stops us." *Id.* at 235, 82 S.Ct. at 1292. Following a short recess requested by his co-counsel, McConnell refrained from asking questions that the judge had forbidden; in fact, he did not ask any more such questions during the course of the trial.

The trial judge summarily found McConnell guilty of criminal contempt for insisting that he be allowed to make offers of proof in compliance with Rule 43(c), and for threatening to violate the judge's order that he refrain from making his offer of proof by questioning witnesses in the presence of the jury. The court of appeals affirmed. The Supreme Court, in an opinion by Mr. Justice Black, reversed, holding that "a mere statement by a lawyer of his intention to press his legal contention until the court has a bailiff stop him [cannot] amount to an obstruction of justice that can be punished under the limited powers of summary contempt . . . ." *Id.* at 236, 82 S.Ct. at 1292. "[T]he bailiff never had to interrupt the trial by arresting petitioner," Justice Black emphasized,

> for the simple reason that after this statement petitioner never did ask any more questions along the line which the judge had forbidden. . . . The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty. The petitioner created no such obstacle here.

*Id.*

Freedman suggests that *McConnell* permits a lawyer to disregard an adverse ruling by the trial judge if the lawyer believes that such action is necessary to protect the record for appeal purposes. We cannot agree. *McConnell* stands only for the narrow proposition that an attorney's unfulfilled threat to violate a trial judge's order does not constitute an obstruction of justice summarily punishable as criminal contempt. *United States v. Seale,* 461 F.2d 345, 363 (7th Cir. 1972). The instant case differs

significantly from *McConnell*: Whereas Mr. McConnell complied with the trial judge's instruction, Mr. Freedman, in defiance of seven direct orders, proceeded to do precisely what the trial judge had commanded him not to do. *McConnell*, we conclude, does not govern this appeal.

Freedman also relies on *Morrissey v. National Maritime Union, supra,* 544 F.2d at 32. In that case, five days before the scheduled start of the trial counsel for one of the defendants learned that his client might require emergency surgery on the opening day of the trial. Counsel immediately advised the judge by telephone, requested an adjournment of the trial, and offered to obtain an affidavit from the treating physician. The judge replied that it was unnecessary to obtain such an affidavit or to advise plaintiff's counsel, because the adjournment would be denied. At the opening of the trial, the defendant's counsel moved for an adjournment or, in the alternative, for a severance, stating that his client was to undergo a serious operation. The judge denied both requests. The trial proceeded, and a substantial verdict was rendered in favor of the plaintiff.

The court of appeals declined to reverse on account of the denial of a continuance, principally because counsel at no time made an offer of proof concerning the material testimony that the hospitalized defendant would have given. While counsel sought to excuse this on the basis of the judge's statement on the telephone that there was no need to supply a medical certificate or to advise plaintiff's counsel since he was going to deny the continuance in any event, the court of appeals held that "this did not relieve counsel of his duty to protect the record." *Id.* at 32.

The appellant asserts that *Morrissey* establishes the necessity of his action in this case. Had he obeyed the trial judge's order, Freedman maintains, he, like the defendant's lawyer in *Morrissey,* might later have found the court of appeals unwilling to consider his challenge to the trial judge's ruling. We are not persuaded that *Morrissey* justifies Freedman's conduct.

■ *Morrissey* and the instant case are dissimilar in one critical respect. The trial judge in *Morrissey* never ordered the defendant's lawyer to refrain from making an offer of proof that would have preserved the record. In fact, the judge never even advised the lawyer that it was unnecessary to make such an offer. The judge said only that it was unnecessary to obtain a physician's affidavit or to contact plaintiff's counsel. Defense counsel's failure to protect the record was entirely his own fault, resulting solely from his careless interpretation of the judge's statement. *Morrissey* does not address the question presented in this appeal, that is, whether an attorney's belief that certain action is necessary to protect the record justifies his violation of the judge's multiple direct orders.[9]

### B.

■ We decline the appellant's invitation to consider the merits of the order that he violated. It is well settled that the invalidity of a court order generally is not a de-

---

9. Freedman relies on several other cases that are also inapposite. In *Phillips v. Kitt,* 110 U.S.App.D.C. 186, 290 F.2d 377 (1961) (per curiam), counsel made a suggestion to the trial judge for the instruction of the jury. The judge adopted the suggestion, and so instructed the jury. On appeal, appellants complained about the supplemental instruction, but the court of appeals noted that counsel had failed to object or make further suggestions at the conclusion of the supplemental instruction. "We think he was under a duty to object," the court of appeals wrote, "and, even at the risk of incurring the displeasure of the trial court, to insist upon his objection. Having failed to do so, it is too late to urge this as error here." *Id.* at 378.

The attorney in *Phillips* was not faced with a direct order of the trial judge; that case dealt only with an attorney's inexcusable failure to protect the record by noting an objection.

Similarly, in *Marrone v. United States,* 355 F.2d 238 (2d Cir. 1966), *Andrews v. Olin Mathieson Chem. Corp.,* 334 F.2d 422 (8th Cir. 1964), and *Sorrels v. Alexander,* 79 U.S.App. D.C. 112, 142 F.2d 769 (1944), appellate courts refused to consider an appellant's challenge to the trial court's exclusion of certain evidence because counsel had failed to make adequate offer of proof. In none of those cases, however, had counsel been ordered by the trial judge not to make an offer of proof.

fense in a criminal contempt proceeding alleging disobedience of the order. *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers,* 330 U.S. 258, 293–94, 67 S.Ct. 677, 91 L.Ed. 884 (1947). *See generally Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1342 (3d Cir. 1976). The issue as we see it is not whether the judge was correct in ordering Mr. Freedman not to state the reasons for his objection,[10] but whether Mr. Freedman had the right to state the reasons for his objection in violation of an explicit order that he not do so under pain of criminal contempt.

Freedman argues that the danger of foreclosing appellate review of the trial judge's restriction of his method of cross-examination required him to violate the judge's order. Yet he has not cited a single case in which an appellate court has held that an attorney's compliance with a direct order of a trial court barred his client's raising an issue on appeal. Nor has our own extensive research disclosed such a case. The void, we are sure, is not inadvertent. A court of appeals could not penalize a litigant solely because his attorney fulfilled his well established obligation to comply with the orders of a trial judge. *Cf. Maness v. Meyers,* 419 U.S. 449, 474, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) (White, J., concurring). To conclude otherwise would require us to ascribe an irrationality to the appellate process which our knowledge of the law and our objective respect for the judicial system will not permit.[11]

We do not dispute an attorney's right in trying a case to be contentious, fearless, and zealous in representing his client's interests. *See Offutt v. United States,* 348 U.S. 11, 13, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *Sacher v. United States,* 343 U.S. 1, 13–14, 72 S.Ct. 451, 96 L.Ed. 717 (1952). As the Supreme Court has said, "[I]t is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts." *United States v. Sacher, supra,* at 9, 72 S.Ct. at 455 *quoted in Maness v. Meyers,* 419 U.S. 449, 459 n. 7, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). But the case law establishes that a direct order of the trial judge fixes the limits of proper advocacy; the vigor permissible in representing a client's interests has never included the flouting of a judge's rulings. *Dunn v. United States,* 388 F.2d 511, 513 (10th Cir. 1968); *In re Osborne,* 344 F.2d 611, 615 (9th Cir. 1965). Disobedience is not an ingredient of contentiousness; defiance is not an element of zealousness.

The Supreme Court has recently reaffirmed counsel's obligation to comply with the orders of a trial judge. In *Maness v. Meyers, supra,* the Court held that an attorney is not subject to the penalty of contempt for advising his client, in good faith, to assert the fifth amendment privilege against self-incrimination in any proceeding embracing the power to compel testimony. The narrow holding in *Maness* was based on the peculiar nature of the fifth amendment privilege. Mr. Chief Justice Burger, writing for the Court, was careful to emphasize, however, the "basic proposition that all orders and judgments of courts must be complied with promptly." 419 U.S. at 458, 95 S.Ct. at 591.[12] "This principle," he wrote, "is especially applicable to orders issued

---

**10.** Both Freedman and the trial judge referred to Freedman's disagreement with the judge's ruling as an "objection." We use the same term for the sake of consistency, but observe that the word "exception" is more appropriate. *See United States v. United States Fidelity & Guar. Co.,* 236 U.S. 512, 529, 35 S.Ct. 298, 59 L.Ed. 696 (1915).

**11.** *See In re Dellinger,* 461 F.2d 389, 398 (7th Cir. 1972) ("if a trial judge prejudicially denies

counsel on adequate opportunity to argue a point, appellate courts will reverse . . .").

**12.** The Chief Justice continued:

If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is

during trial. E.g., *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)." *Id.* at 459, 95 S.Ct. at 591.

Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling. An objection alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling. . . But, once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders. While claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply.

*Id.* (citation and footnote omitted). *Accord, Sacher v. United States, supra,* 343 U.S. at 9, 72 S.Ct. 451; *United States v. Abascal,* 509 F.2d 752, 754 (9th Cir.), *cert. denied,* 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975) ("The ability of a trial judge to compel obedience to his orders is fundamental to the proper functioning of our system of justice."); *In re Dellinger,* 502 F.2d 813, 816 (7th Cir. 1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975) ("[L]awyers are required to obey even incorrect orders; the remedy is on appeal.") [13]

The Seventh Circuit has held that one's belief that certain action is necessary to preserve claims for appellate review does not excuse violation of a direct order of the trial judge.[14] In *United States v. Seale,* 461

---

ultimately ruled incorrect. *Howat v. Kansas,* 258 U.S. 181, 189–190, [42 S.Ct. 277, 280–281, 66 L.Ed. 550] (1922); *Worden v. Searls,* 121 U.S. 14, [7 S.Ct. 814, 30 L.Ed. 853] (1887). The orderly and expeditious administration of justice by the courts requires that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States· v. Mine Workers,* 330 U.S. 258, 293, [67 S.Ct. 677, 696, 91 L.Ed. 884] (1947). 419 U.S. at 458–59, 95 S.Ct. at 591.

**13.** *See In re Dellinger,* 461 F.2d 389, 398–99 (7th Cir. 1972), in which the court considered contempt citations against the attorneys who had represented the defendants in the notorious Chicago Seven trial:

Many of the contempt specifications against the attorneys arise out of their persistence in continuing argument on motions and rulings after express orders by the trial judge to cease. With respect to these specifications, appellants contend that such persistence was warranted by the trial judge's refusal to hear reasonable argument from the defense prior to ruling. . . . [T]his principle . . . cannot be accepted as a general principle. If a trial judge prejudicially denies counsel an adequate opportunity to argue a point, appellate courts will reverse, and that alone will deter most judges from arbitrarily cutting off argument. . . . And where the judge is arbitrary or affords counsel inadequate opportunity to argue his position, counsel must be given substantial leeway in pressing his contention, for it is

through such colloquy that the judge may recognize his mistake and prevent error from infecting the record. . . . However, this is not to say that attorneys may press their positions beyond the court's insistent direction to desist. On the contrary, the necessity for orderly administration of justice compels the view that the judge must have the power to set limits on argument.

**14.** The issue seems to arise infrequently. The Ninth Circuit was faced with a very similar situation in *Hallinan v. United States,* 182 F.2d 880 (9th Cir. 1950), *cert. denied,* 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed. 1375 (1951). In that case, an attorney's line of questioning in cross-examining a witness was objected to by opposing counsel. The trial judge sustained the objection. The cross-examining attorney informed the judge that he considered the ruling erroneous, and went on to say that he would have to continue to ask the questions in order to "build a record." *Id.* at 886. He thereupon pursued the forbidden line of questioning. Each question was objected to, and each objection was sustained. The Ninth Circuit affirmed an order of criminal contempt, finding no justification in appellant's contention that he had to make a record.

We note that the attorney in *Hallinan* was never directly and explicitly ordered by the trial judge to cease asking questions to "build a record." The trial judge merely sustained continued objections to those questions. The Ninth Circuit's decision appears to have been based, at least in part, on the fact that the record was sufficiently definite to have permitted appellate review; the case therefore does

F.2d 345 (7th Cir. 1972), Bobby Seale, in defiance of the trial court's directives, disrupted his own trial by insisting on his right to be represented by the counsel of his choice, or to represent himself. The trial judge held him in criminal contempt. On appeal, Seale contended that he was unaware that his sixth amendment claims were preserved for appellate review, and that his conduct was explicable by his desire to make a record. The Seventh Circuit held that Seale's reliance on *In re McConnell,* 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962), was misplaced, and rejected his contention.[15] "[O]pen defiance of the trial court's directives to desist or disruptive persistence beyond all bounds of propriety would not be justified merely because Seale may have entertained the belief that some protest was called for," the court said. "Where there is such defiance or obstructive excess of persistence, belief in the necessity to register objections for the record may reduce the degree of culpability but does not exonerate." 461 F.2d at 363 (footnote omitted).

If non-lawyer Seale's defiance of a judge's order was inexcusable, how much more so should be the conduct of appellant Freedman, a seasoned trial lawyer. We agree with the Seventh Circuit, and hold that a trial attorney's belief that certain action is necessary to protect the record for appellate review does not excuse his deliberate defiance of the trial judge's explicit and repeated orders.[16] The phrase "preserving the record for appeal" is not a talisman that absolves a lawyer from his usual obligation to comply with a trial judge's direct orders.

■ At oral argument in this court, counsel for Freedman offered another justification for the appellant's action. Freedman's disregard of the judge's order was necessary, he said, not only to protect the record, but also to persuade the trial judge to retract his restriction on Freedman's method of cross-examination. An appeal would provide an inadequate means of challenging the restriction, counsel asserted; the witness was cornered, and Freedman had achieved a momentum that probably could never be resumed at a new trial after an appeal. In the interest of seizing an irrecoverable opportunity, the argument concluded, Freedman could permissibly defy the judge's order and state the reasons for his objection.

Counsel relied on *Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), for this novel proposition. As we have already noted, *Maness* held that an advocate may not be held in contempt for advising his client, in good faith, to assert the fifth amendment privilege against self-incrimination in any proceeding embracing the power to compel testimony. In the course of its opinion, the Supreme Court observed that when a witness is ordered to reveal information during the course of a trial, compliance could cause irreparable injury because "appellate courts cannot always 'unring the bell' once the information has been released. Subsequent appellate vindication does not necessarily have its ordinary consequence of totally repairing the error." *Id.* at 460, 95 S.Ct. at 592. A witness in such a situation, said the Court, has the choice of complying with the order or resisting the order with the concomitant possibil-

not directly confront the issue before us as we have framed it: whether an attorney has the right to state the reasons for his exception to a trial judge's ruling in violation of an explicit order that he not do so under pain of criminal contempt. As we have indicated previously, we decline to consider whether the actual state of the record in the instant case obviated the need for Freedman's stating the reasons for his objection; we deem that inquiry irrelevant. As we read *Hallinan,* nothing that the court said suggests that had it addressed the precise issue

in the instant case, it would have reached a result different from ours.

15. The court found *McConnell* inapposite for the reasons we have stated in Part IIA of this opinion.

16. Proper conduct for Mr. Freedman would have been to say, "I shall comply with Your Honor's orders. Will Your Honor permit the record to show that I desired to state the reasons for my objection but did not do so in response to your explicit direction?"

ity of an adjudication of contempt if his claims are rejected on appeal.

*Maness* was based on the unique nature of the fifth amendment privilege. We find in that case no general rule that a trial court's order may be violated when the person at whom the order is directed determines that the appellate process is inconvenient. On the contrary, the Supreme Court reaffirmed the general obligation to comply with the orders of a trial court. "Remedies for judicial error may be cumbersome," the Court said, "but the injury flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice." *Id.* Compliance with the trial judge's rulings may cause counsel 'to lose an advantage that never may be regained. But that is a small premium to pay to protect our dynamic judicial system from courtroom chaos.

## III.

■ Mr. Freedman contends that his conduct did not amount to an obstruction of justice [17] because he was merely doing in good faith what he deemed essential, in his client's interest, to preserve a point for appeal. We agree with appellant, as we must, that "before the drastic procedures of the summary contempt power may be invoked to replace the protections of ordinary constitutional procedures there must be an actual obstruction of justice. . . ." *In re McConnell,* 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962). *Accord, In re Little,* 404 U.S. 553, 555, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972); *Ex parte Hudgings,* 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919); *United States v. Proffitt,* 498 F.2d 1124, 1128 (3d Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

We also agree that "in close cases where the line between vigorous advocacy and actual obstruction defie[s] strict delineation, doubts should be resolved in favor of vigorous advocacy." *United States ex rel. Robson v. Oliver,* 470 F.2d 10, 13 (7th Cir. 1972). *Accord, In re Dellinger,* 461 F.2d 389, 398 (7th Cir. 1972). But the latitude allowed an attorney representing a client's interests does not extend to deliberate defiance of a judge's direct and explicit orders. We have not the slightest doubt that flouting a trial judge's commands is the essence of obstructing the administration of justice.

■ That Freedman may have been polite, respectful, and perhaps subdued in his disobedience is irrelevant; overt physical disorder is not necessary to obstruct the administration of justice. *United States v. Wilson,* 421 U.S. 309, 314–15, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *United States v. Proffitt, supra,* 498 F.2d at 1128–29. Freedman's conduct was an affront to the trial judge's authority to control the proceedings in his own courtroom. An attorney who, in deliberate disregard of seven direct and explicit orders by the trial judge, pursues a course that he determines to be in the best interests of his client, offends the dignity and authority of the court and thereby obstructs the administration of justice. *United States v. Seale,* 461 F.2d 345, 371 (7th Cir. 1972).[18] To hold otherwise would be to strip trial judges of their power to supervise the proceedings before them, and to clothe counsel with the authority to conduct trials in whatever manner they deem appropriate. Furthermore, we note that Freedman's conduct was obstructive because it resulted in a wholly unnecessary and not insignificant delay of the trial. For this reason, too, we conclude that his con-

---

17. *See In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Jessup v. Clark,* 490 F.2d 1068, 1071 (3d Cir. 1973); *United States v. Seale,* 461 F.2d 345, 366–67 (7th Cir. 1972).

18. In *Seale,* the court said,
The unmistakable implication of *In re McConnell,* 370 U.S. 230, 235, 236, 82 S.Ct. 1288, 8 L.Ed.2d 434, [(1962), discussed in Part IIA of this opinion] is that defiance of

the court's order to cease questioning would have actually obstructed the proceedings. As governor of the trial, the trial judge must have the authority necessary to ensure the orderly and expeditious progress of the proceedings. His directives in exercise of this authority must be obeyed; otherwise the clear result would be courtroom chaos.
461 F.2d at 371.

duct rose to the required level of disruptiveness. *In re Dellinger,* 502 F.2d 813, 815 (7th Cir. 1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975); *United States v. Proffitt, supra,* 498 F.2d at 1129.

## IV.

Freedman next contends that he lacked the requisite criminal intent. Relying on *United States v. Greyhound Corp.,* 508 F.2d 529, 532 (7th Cir. 1974), and *In re Brown,* 147 U.S.App.D.C. 156, 454 F.2d 999, 1006 (1971), he argues that his conduct was not willful because he merely pursued a plausible though mistaken alternative in good faith. In those cases, however, the courts were dealing with the contemnors' assertions that the court order or rule they were charged with violating did not clearly cover their allegedly contumacious conduct. It was in response to the contemnors' arguments that they could not reasonably have been expected to know that the trial courts would consider their conduct contemptuous that the appellate courts said that "[w]illfulness, for purposes of criminal contempt, does not exist where there is a '[g]ood faith pursuit of plausible though mistaken alternative.'" *United States v. Greyhound, supra,* 508 F.2d at 532, *quoting In re Brown, supra,* 454 F.2d at 1007. In the instant case, Freedman knew that the trial judge would regard his violation of the judge's order as contemptuous. The judge explicitly told him so four times.

■ We recognize, of course, that willfulness is an element of criminal contempt which must be proved beyond a reasonable doubt. *In re Williams,* 509 F.2d 949, 960 (2d Cir. 1975); *United States v. Greyhound Corp., supra,* 508 F.2d at 531. We are also aware that no uniform standard of willfulness has been defined or applied in criminal contempt cases. *See* Dobbs, *Contempt of Court: A Survey,* 56 Cornell L.Rev. 183, 262–63 (1971). In the interest of providing sufficient protection for counsel's right to be "persistent, vociferous, contentious, and imposing" when acting on his client's behalf, *In re Dellinger,* 461 F.2d 389, 400 (7th Cir. 1972), we adopt the Seventh Circuit's

sensible standard for judging the minimum requisite intent for criminal contempt:

> The minimum requisite intent is . . defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful. . . .
> Of course, an actual design to subvert the administration of justice is a more grievous and perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent.

*United States v. Seale,* 461 F.2d 345, 368–69 (7th Cir. 1972). *Accord, In re Dellinger, supra,* 461 F.2d at 400.

[11] When we measure Freedman's conduct by this standard, we have no doubt that he acted with the minimum requisite intent. In view of his long and extensive experience as a trial lawyer, the well established obligation of an attorney to heed even the incorrect orders of a trial judge, the seven explicit and direct orders issued by the trial judge in this case, and the four unequivocal warnings that violation of those orders would be punished as criminal contempt, Freedman should reasonably have been aware that his conduct was wrongful. *See United States v. Wilson,* 421 U.S. 309, 315–16 & n. 7, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *United States v. Leyva,* 513 F.2d 774, 777 (5th Cir. 1975). He should have known that during the course of a trial, an attorney's understanding of the law must yield, for the time being at least, to the judge's command.

We conclude our consideration of the contempt order in No. 76–2266 by emphasizing that the regrettable incident underlying the order embodies all of the elements necessary to support a summary criminal contempt conviction: Freedman's action was intentional, constituted misbehavior which caused an actual obstruction of the administration of justice, and occurred within the presence of the court. *United States ex rel. Robson v. Oliver,* 470 F.2d 10, 12 (7th Cir. 1972); *see United States v. Harris,* 382 U.S. 162, 164, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); *In re Williams,* 509 F.2d 949, 960 (2d Cir. 1975).

## V.

The incident underlying the second contempt order (No. 76–2470) occurred approximately six weeks after the first incident, on November 9, 1976. Freedman was cross-examining Samuel F. Long, a black operating engineer who had testified on direct regarding his experiences with Local Union 542. Freedman marked Long's work record as an exhibit, and then began interrogating the witness about the record, apparently in an attempt to show that Long had received many work assignments through the local. When opposing counsel objected that Long's work history was beyond the scope of direct, the trial judge sustained the objection and restricted cross-examination to the two jobs about which Long had testified on direct. Appellant excepted to the trial judge's ruling.

Freedman resumed questioning the witness about his work record. Opposing counsel again objected. The trial judge sustained the objection and repeated his prior ruling. Appellant then began to make offers of proof of certain entries on Long's work record. "Mr. Freedman, I have made my ruling," the trial judge told him. "You can have as a proffer, and I will accept as your proffer, that you would proffer any and everything in this record. It will be marked as a part of the record; and if I am in error, it will be available." Freedman read another entry from the work record in order, he said, to make an offer of proof; opposing counsel objected that "[a]ll Mr. Freedman is doing is reading word for word from the record." At that point the judge told Freedman to note only the dates of the entries that he desired to include in his offer of proof. Those particular entries would be on the record in their entirety, the judge said, because the work record itself, marked as an exhibit, would be a part of the record.

Freedman, however, went on to read another entire entry from the work record. "Just give us the days," the judge repeated. Appellant responded that he did not think that such a procedure was adequate to make an offer of proof, and began to read another entry. The judge reiterated his instruction to give only the dates of the entries. Appellant read another entire entry, and restated his belief that his action was necessary. Twice more the judge instructed Freedman to read only the dates of the entries. "I have to make an offer of proof," Freedman responded. "If Your Honor is going to hold me in contempt, I am sorry; but I want to do it." The judge directed him twice more to read only the dates. "I am directing you to give only the dates," the judge said, "and I will take notice and the Appellate Court can read and they can take notice of the entries." "I will have to do what I think is best for my client's interest," Freedman replied.

Freedman thereupon read five complete entries from the work record. Opposing counsel objected to this method of making an offer of proof and noted that "[i]t serves no purpose except to delay this litigation." "I have directed Mr. Freedman to give the date of entries," the judge stated. Freedman read five more complete entries, and the objection was renewed. The judge repeated his direction for the ninth time. Freedman read seven more complete entries. When opposing counsel began to object again, the judge interrupted. "I have made my ruling," the judge remarked. "If Mr. Freedman wants to disregard it, I have made my ruling. You proceed, Mr. Freedman. You understand what my ruling was?" "I understand perfectly what Your Honor's ruling was," Freedman answered. After he read eight additional entries, Freedman indicated that he was finished with the work record.

The judge immediately called a recess until ten o'clock the next morning, and stated that at that time he would make findings regarding what he considered to be "a willful disregard of my order." The next morning, the judge informed the parties that a transcript of the preceding day's proceedings had not yet been prepared, and recessed court until 2:00 P.M. When court reconvened, the judge filed findings and a

memorandum order holding Freedman in criminal contempt, and fining him $500.[19]

On appeal from this criminal contempt order, Freedman again contends that his conduct was necessary to protect the record and to persuade the judge to retract his restriction on Freedman's cross-examination. He also claims that he lacked the requisite criminal intent because he acted in the good faith belief that his action was proper. Furthermore, he asserts that the trial judge's delay in filing the contempt order shows that Freedman's conduct did not constitute an actual obstruction of the administration of justice summarily punishable as criminal contempt; for this reason, appellant argues, and because the trial judge allegedly adopted such an adversary posture with respect to him, he was entitled to a due process hearing before another judge.

## VI.

■■■ For the reasons stated in Part II of this opinion, we reject appellant's contention that his conduct was justified by the need to protect the record and to persuade the trial judge to change his ruling on the scope of cross-examination.[20] Freedman was directed nine times to read only the dates of the work record entries that he desired to include in his offer of proof, yet he read twenty-eight complete entries in deliberate defiance of the judge's command. His belief that such action was necessary to protect the record for appellate review did not excuse his disregard of the trial judge's explicit, direct, and repeated instructions,

nor did the inconvenience of the appellate process absolve Freedman from his obligation to comply with those instructions.

For the reasons stated in Part IV of this opinion, we also reject appellant's contention that he lacked the requisite criminal intent. In view of his extensive experience as a trial lawyer, the well established obligation of an attorney to heed even the incorrect orders of a trial judge, the nine explicit directions issued by the trial judge in this case, and Freedman's expressed understanding of the trial judge's instructions, Freedman should reasonably have been aware that his conduct was wrongful.[20A]

## VII.

■■■ Freedman next contends that because the trial judge did not bring the contempt charge at the time the act was committed, there was no actual obstruction of the administration of justice to warrant summary punishment under Fed.R.Crim.P. 42(a). If summary punishment was really "necessary in order to achieve 'summary vindication of the court's dignity and authority,'" *Harris v. United States*, 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965), *quoting Cooke v. United States*, 267 U.S. 517, 534, 45 S.Ct. 390, 69 L.Ed. 767 (1925), Freedman argues, the trial judge could not have delayed twenty-four hours in issuing his contempt order. According to the appellant, the trial judge's own conduct demonstrates that a finding of contempt should have been made only after notice

**19.** The district court's Findings and Memorandum Order and his Order, Findings, and Fine of Contempt are set forth in Appendix B to this opinion.

**20.** The judge's ruling did no more than restrict the scope of the cross-examination to the testimony on direct examination. He did not preclude Freedman, as the judge's subsequent rulings confirmed, from calling the witness in support of the defendants' case.

**20A.** Freedman does not appear to contend that he was unfairly surprised by being cited for criminal contempt because the trial judge failed to warn him that his conduct was contemptuous. In any event, such an argument is without merit. We concede that the practice of giving warnings is generally desirable. *See United States v. Seale*, 461 F.2d 345, 366 (7th Cir. 1972). But when the manner in which the court treats the matter would indicate to any lawyer that the judge considers the conduct contemptuous, warnings are not essential. *United States v. Schiffer*, 351 F.2d 91, 95 (6th Cir. 1965), *cert. denied*, 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966). Freedman clearly understood the judge's perception of his conduct: "If Your Honor is going to hold me in contempt, I am sorry," he said, "but I want to do it."

and a hearing before another judge as required by Fed.R.Crim.P. 42(b).[21]

The Supreme Court considered virtually the same argument in *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), a case in which the trial judge awaited completion of the trial to punish defense counsel under Rule 42(a) for their contemptuous conduct during the course of the trial. The contemnors argued that the progress of the trial could no longer be obstructed by the time of its completion, and that summary action had become unnecessary. Therefore, the contemnors asserted, they could not be convicted or sentenced except after notice and a hearing before another judge as provided in Rule 42(b).

The Court, in an opinion by Mr. Justice Jackson, rejected the argument that a trial judge's failure to act at once upon the occurrence of a contemptuous incident deprives him of the power to proceed under Rule 42(a). "We think 'summary' as used in this Rule does not refer to the timing of the action with reference to the offense," the Court said, "but refers to a procedure which dispenses with the formality, delay and digression that would result from . . . all that goes with a conventional court trial." *Id.* at 9, 72 S.Ct. at 455. Indeed, the Court recognized the dangers of immediate action:

> Reasons for permitting straightway exercise of summary power are not reasons for compelling or encouraging its immediate exercise. Forthwith judgment is not required by the text of the Rule. Still less is such construction appropriate as a safeguard against abuse of the power. . . . If we were to hold that summary punishment can be imposed only instantly upon the event, it would be an incentive to pronounce, while smarting under the irritation of the contemptuous act, what should be a well-considered judgment. We think it less likely that unfair condemnation of counsel will occur if the more deliberate course be permitted.

*Id.* at 9–11, 72 S.Ct. at 455. The Court held that if the trial judge deems immediate action inexpedient, he may defer judgment on contemptuous conduct until the completion of the trial without extinguishing his power to proceed summarily under Rule 42(a).[22]

Although we note that the continuing vitality of *Sacher* has been questioned,[23] the case has not been overruled. And although the commentators have disapproved the procedure sanctioned in *Sacher, see, e. g.,* 8B J. Moore, Federal Practice ¶ 42.04[2] (1976); 3 C. Wright, Federal Practice and Procedure § 707, at 169 (1969), the procedure employed in the instant case—a delay of twenty-four hours—is not subject to the same criticism. *See* 3 C. Wright, *supra,* § 707, at 168 ("[S]ome delay is permissible in invoking the summary contempt power, since the court may wish to reflect on the necessity of its exercise and time will be needed to prepare the contempt certificate.") The judge in this case did not continue with the trial after Freedman defied his orders. Instead, he immediately recessed court and awaited preparation of the transcript. The trial did not resume until the contempt order was filed. Under these circumstances, we cannot conclude that the trial judge's twenty-four hour delay demonstrated that summary punishment was unnecessary. The recess was cautionary, judicious, and laudable. *See Sacher, supra,* at 9–11, 72 S.Ct. 451; *id.* at 41, 72 S.Ct. at 470. (Frankfurter, J., dissenting) ("[P]ower to cite for contempt summarily is not lost by taking a reasonable, brief time for judicious consideration whether such drastic action is

---

21. At the time that the trial judge made his findings and entered his order, appellant moved for a hearing before another judge and a jury. The motion was denied.

22. *Accord, United States v. Schiffer,* 351 F.2d 91, 94–95 (6th Cir. 1965), *cert. denied,* 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966); *In re Osborne,* 344 F.2d 611, 616 (9th Cir. 1965); *United States v. Galante,* 298 F.2d 72, 76 (2d Cir. 1962).

23. *See, e. g., Jessup v. Clark,* 490 F.2d 1068, 1072 n.5 (3d Cir. 1973). *But see* cases cited in note 22 *supra.*

necessary in a pending trial."); *MacInnis v. United States*, 191 F.2d 157 (9th Cir. 1951), *cert. denied*, 342 U.S. 953, 72 S.Ct. 628, 96 L.Ed. 708 (1952) (overnight delay permissible); *Hallinan v. United States*, 182 F.2d 880 (9th Cir. 1950), *cert. denied*, 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed. 1375 (1951) (same). We decline to hold that the trial judge's circumspection in dealing with the contempt, and his caution in awaiting preparation of a transcript before drafting his findings, deprived him of the power to proceed under Rule 42(a).[24]

Finally, Freedman argues that although the trial judge was not personally attacked, he assumed an adversary attitude toward the appellant that disqualified him from adjudicating the contempt. Appellant points to the judge's "acid and sarcastic" statements in his Findings and Memorandum Order, *see* Appendix B, to the effect that the judges of the Court of Appeals have the capacity to read and understand the English language, that Freedman's conduct was defiant, and that Freedman's actions amounted to an assumption of judicial responsibilities. Relying on cases holding that the personal embroilment of the trial judge requires nonsummary disposition of a contempt charge,[25] Freedman asserts that he was entitled to a hearing pursuant to Fed.R.Crim.P. 42(b).

The record does not support the allegation that the judge became personally embroiled with the appellant and that he was therefore unable to sit impartially in judgment on the contempt charge. Freedman concedes that his conduct did not vilify the judge, and we cannot agree that the judge's comments demonstrate a bias against Freedman. The judge's description of appellant's conduct was neither acid nor sarcastic; it was simply accurate. The trial judge exhibited patience and restraint, and did his utmost to preserve order and decorum; he did not engage in wrangling or bickering, and used the summary contempt power only as a last resort. *See In re Williams*, 500 F.2d 403, 405 (2d Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 803 (1975); *United States v. Schiffer*, 351 F.2d 91, 95 (6th Cir. 1965), *cert. denied*, 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966). *Compare Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Appellant mistakes judicial disapproval for personal pique. A judge who objectively expresses his antipathy toward contumacious conduct does not thereby disqualify himself from adjudicating the contempt under Rule 42(a). Under the circumstances of this case, we see no need for another proceeding to adjudicate what one judge has already witnessed. Summary disposition, we hold, was appropriate.

## VIII.

The orders of the district court will be affirmed.

## APPENDIX A

The Court: The record will speak for itself.

I have advised Mr. Freedman to not state on the record any further the basis for his objection.

I have advised him—

Mr. Freedman: I didn't state any basis for my objection yet.

The Court: Mr. Freedman, please permit me to finish. When I am ready to hear from you, I will let you know, and when I am finished I will let you know.

I have advised him to not state as he insisted he would, contrary to my instructions, the basis for his objection to certain rulings I have made. I consider his insistence that he would state the basis, though

---

**24.** Freedman also contends that his conduct did not amount to an obstruction of justice because he was merely doing what he deemed essential, in his client's interest, to preserve a point for appeal. For the reasons stated in Part III of this opinion, we reject that contention.

**25.** *E. g., Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *United States v. Meyer*, 149 U.S.App.D.C. 212, 462 F.2d 827 (1972).

I have advised him not to, to be a wilful, deliberate act done not isolated in the heat of trial but rather a deliberate, continuous and repeated act which is in violation of the rule issued by this Court and which constitutes the basis of a criminal contempt violation under Rule 42, conduct which takes place in the presence of the judge over which a summary disposition would be appropriate.

I have sent for the Marshals. In 13 years I have never had to hold a lawyer in contempt, and I don't welcome that.

I do not believe that a rule of the Court can be flouted. The issue is whether I am the judge, and the Court will conduct the proceedings or whether it will be done at Mr. Freedman's whim.

Now, I am giving him the last opportunity. I am directing him to not state on the basis of this record his reasons for his objections on the ruling I have made, and it is up to him.

Mr. Freedman: Is Your Honor permitting me to speak now?

The Court: I am permitting you to speak, and I have told you what my position is.

Mr. Freedman: I deem it my responsibility under the law when I make an objection to give the reason for the objection. I have done this all of my trial life, and I consider it not only my right to do it but my duty to do it.

As I said to Your Honor before, I meant no disrespect in any way, and representing my client's interests I have to do it to the best of my judgment.

I don't intend to be subservient, but I don't intend to be disrespectful, and I am doing what the law requires me to do to state the reasons for my objections as I state the objections. If Your Honor doesn't want to hear it, then it is for the benefit of the appellate court.

The Court: I have told you, Mr. Freedman, that on the issue which we have just discussed that I don't want to hear the reasons for your objections, and I am directing you to proceed to your next question.

Now, if you want to state the reasons for your objections, I will consider that to be a violation of my order, a violation of Rule 42, and criminal contempt.

Mr. Freedman: Well, as I understand the law and as I understand my legal responsibilities, I must state the reason for my objection in addition to my objection. I think the appellate court has stated—

The Court: Mr. Freedman—

Mr. Freedman: You said you would give me an opportunity to be heard, Your Honor.

The Court: So it is clear, Mr. Freedman, I am directing you to proceed to your next question and not to state your reasons for objecting to my last ruling. Now it is your choice.

Mr. Freedman: I must state the reasons for my objection, and they are as follows:

This witness has not only contradicted himself but it is an absolute conflict between what he said on the stand here and what he said in his deposition, and that is the reason for my objection. I will read to you the part that I think is an absolute conflict.

To repeat some of the questions at the bottom of page 60:

"Q. Who made that determination?

"A. Which determination?

"Q. That money should be withheld?

"A. The Federal Government.

"Q. Was it because of Local 542's activity?

"A. I can't say that."

That is a direct conflict of what he said from the stand here, and that is my reason.

The Court: All right. I consider this to be a wilful violation of my ruling.

I have taken into full consideration the cases in this circuit such as *United States of America vs. Profitt*, 498 F.2d, 1124; *United States vs. Schiffer*, 351 Fed.2d, 91, and the whole series of cases which are discussed here.

I think this is wilful, deliberate misconduct in court, a wilful, deliberate refusal to comply with an order of the Court.

I find that Abraham Freedman is guilty of criminal contempt, and I sentence him to 30 days. I will give him an opportunity, if he desires, to file an appeal on that. Otherwise the Marshals can commit him.

Mr. Freedman, you can do whatever you wish.

Mr. Freedman: I have already done it.

The Court: I will give you the right to challenge my sentence. I will give you the right to appeal. I think it is a wilful violation, and it is in contempt.

Mr. Freedman: Well, I disagree with Your Honor on the law, and I disagree with the other statements that Your Honor made that I was in continuing contempt. I have not been in contempt of this Court at any time.

The Court: I find Mr. Freedman in contempt, and I sentence him to 30 days. I will permit him to challenge this in any way he wishes, and if he requests I would·not hold him in the custody of the Marshal until he has pursued whatever remedies he desires to pursue in this case. Otherwise, if he doesn't request that, he will be committed forthwith.

Mr. Freedman: If I don't request what?

The Court: If you are requesting to not be put into the custody of the Marshal I will not put you in the custody of the Marshal as a matter of courtesy, but not as a matter of right.

Mr. Freedman: I certainly don't want to be put in the custody of the Marshal or anyone. I don't want to be put under any restraint. I am not withdrawing from anything I said. I think I am right.

The Court: Mr. Freedman, you have the choice to take an appeal from my ruling—

Mr. Freedman: That's what I will do.

The Court: Do you want to go into custody or wait until judgment is entered?

Mr. Freedman: Or wait until what?

The Court: Wait until judgment is entered. One will be entered in about ten minutes.

Mr. Freedman: That's up to Your Honor.

The Court: All right. You will go into custody of the Marshal.

———

(Recessed at 2:37 P.M.)

———

(In court, 3:17 P.M.)

(Also Present: Charles Sovel, Esq. for Abraham E. Freedman, Esq.)

The Court: Mr. Freedman, would you come to the bar of the court, please.

(Mr. Freedman at bar).

The Court: In accordance with Rule 42 I have made my prerequisite findings, order and commitment of contempt which I sign and give to the Clerk and which I will ask the Clerk to file forthwith and make copies available to Mr. Freedman and the other parties in this case. There is no need for me to read it. It speaks for itself.

Mr. Freedman, I am, under this order, granting you the right to be on your own recognizance to challenge the validity of this order and you may proceed in every way you wish.

This case will be recessed until Tuesday morning.

Mr. Freedman: You mean I am released pending appeal?

The Court: You are on your own recognizance to challenge the validity of this order and—

Mr. Sovel: Your Honor—

The Court: I am sorry. Yes, sir.

Mr. Sovel: If Your Honor please, my name is Charles Sovel. I am here with Mr. Freedman.

Mr. Freedman: He is my partner.

The Court: I remember Mr. Sovel quite well.

Mr. Sovel: I haven't had—

The Court: Of course you haven't. No one had an opportunity to see it. If you

have any questions or Mr. Freedman has any questions on this order I will be in chambers and I will be pleased to talk to you or to talk to you and Mr. Freedman, but he is on his own recognizance.

In 13 years I never held a lawyer in contempt. I regret deeply that I was presented with an option for which there was no rational alternative in my view.

So that the order has been signed. He is on his own recognizance.

The order will be entered of record forthwith, and you will get copies.

## APPENDIX B

### FINDINGS AND MEMORANDUM ORDER

Five weeks ago, during the afternoon of Tuesday, September 28, 1976, I found Abraham E. Freedman, Esquire, guilty of criminal contempt committed in the actual presence of the court, and pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure he was sentenced to thirty (30) days. The service of the sentence was deferred. He was placed on his own recognizance to challenge the validity of that order. The matter is now before the Court of Appeals for the Third Circuit and it is now due for argument in December of 1976. The notes of testimony of September 28, 1976, and my opinion of October 6, 1976 related to the contempt finding are hereby incorporated as an analysis of what I deem to be the relevant law pertaining to the Federal Rules of Criminal Procedure.

I had hoped [fervently] that the previous contempt finding and sentence would cause Mr. Freedman to thereafter proceed within the confines of professional conduct required of counsel. Unfortunately, Mr. Freedman's conduct has again reached the level of such defiant and contumacious refusal to comply with the trial rulings of the Court that it is regrettably necessary to determine whether he is again guilty of criminal contempt in violation of Rule 42(a) of the Federal Rules of Criminal Procedure.

To put the instant factual issue in context, on the morning of November 9, 1976 the plaintiffs put on the stand Samuel Franklin Long as a witness for direct examination. In substance he was questioned about his work experience as to the equipment which he had operated and as to his visit to a site where persons were being trained to use land moving equipment.

The instant problem pertains to whether Mr. Freedman willfully defied my ruling as to the scope of cross-examination which I would permit of Mr. Long. To put the matter in its factual context, Mr. Freedman had marked as Document U-186 the work record of Samuel Franklin Long as kept by the Union. It pertained to events which took place subsequent to April, 1965 and thus subsequent to the two specific job situations at Morrisville and Delaware about which Mr. Long had testified. The work record of an operating engineer is substantially different than the normal work record of an industrial employee. As an example, Mr. Long's work record on U-186 has 112 separately dated entries which makes specific references to separate jobs on which he worked. Since plaintiff had not made reference to work record U-186, I ruled that reference to that document was not permissible on cross-examination. When Mr. Freedman attempted to use this work record as to events subsequent to 1965, plaintiff's counsel, Mr. Reinstein, noted:

> "Objection, Your Honor. Mr. Long's work history in this work record is beyond the scope of direct."

My ruling was:

> "The Court: I will sustain objections about his work record on matters other than the Morrisville and Delaware jobs, which are the only things he was questioned about on direct examination." [N.T.6517]

> "The Court: Mr. Freedman, just so that you will understand the nature of my ruling, anything which is in U-186, if you question the witness about those transactions unless they pertain to the only two jobs of which this witness has testified, I

will sustain an objection thereto. And you have an exception.

So it is not necessary for you to read through these several pages." [N.T.6518]

My purpose in limiting the form of cross-examination was obvious. At this point, ten months after the trial began, I did not want the transcript to be unduly lengthened with the reading to the court stenographer of a whole series of notations which I had precluded from cross-examination. Since the document was already marked it was part of the trial record for me or an appellate court to review. Attempting to further protract this case, Mr. Freedman proceeded to say what his offer of proof was. From my experience with him in the past where extended offers of proof were made and statements from documents which have already been marked as a part of the record have been read in for pages and pages of testimony, I did not want this trial to be further unnecessarily protracted. I advised him that he could proffer anything in U-186, either the entire statement or selected portions, and that he should note the dates of the transactions as given on U-186 and then "the record will speak for itself." (6520) I directed him to give merely the dates of the entries, since obviously a reference to the dates would reveal the issue or factual statement for the proffer of proof which Mr. Freedman claims he wanted to make. He was warned five times to not continue reading into the record matters beyond the date of the entry. On the sixth occasion I said:

"The Court: Mr. Freedman, I am giving you the opportunity to make your offer of proof; and your offer of proof is that you would read into the record certain specific entries which I noted on certain days. That is all I have to have, and automatically that is incorporated in the record.

But what I don't want, Mr. Freedman, is to just have a whole series of entries read into the record because I have already ruled that they are precluded because they are not within the scope of the direct.

So I am trying to accommodate you and give you maximum latitude by getting you to note the dates.

And as I have said before, my ruling applies to all of the entries here."

He continued to flout my order, even after the eighth warning, by claiming "I've got to tell the Court of Appeals of what my offer of proof is, because neither Your Honor or the Appellate Court will know what it means when you read it" (referring to the docket entries). (6525) I am confident the judges of the Court of Appeals are endowed by their creator with the capacity to read the English language and to understand it. We need not take hours of testimony while Mr. Freedman reads entries which are *already* a part of the record. I gave him fifteen opportunities to give the record entries by merely noting the alleged date of the entry which he wanted to use on the work record, so that we could therefore proceed. For fifteen times he *willfully, purposely,* and in a most deliberate fashion refused to follow my order as to what should be done in his alleged proffer of proof but continued to proceed in his own fashion. More than an hour of time was taken spanning many pages of testimony and in deliberate defiance of my trial ruling.

If Mr. Freedman's defiant conduct is to be tolerated or sanctioned, this trial will never end. The doctrines I stated in my October 6, 1976 Memorandum are equally applicable to the events of November 9, 1976:

"Mr. Freedman's conduct was so egregious that to tolerate it the judicial process would degenerate to whatever might be the personal whims of counsel on any particular day. To grant him the latitude he seeks, one might as well have counsel wear the robes, ascend the bench and then make irrevocable rulings while the trial judge patiently awaits the command of counsel. A court trial is not a process in anarchy to be engineered by trial counsel; rather it is an effort to try the case within the parameters of the historic role

where there is always some semblance of order and rationality."

Mr. Freedman's persistent defiance must be put in the context of an already protracted trial which could be extended unlimitedly if counsel is granted the latitude to go on endlessly reading into the record those matters which have *already* been precluded *and* which are already a matter of record. In such a context Mr. Freedman could have extended for three or four hours the "cross-examination" of Mr. Long on matters which had already been precluded.

The conduct of Mr. Freedman has been so contumacious and in such willful defiance of precise court rulings that it is difficult to conceive of such actions emanating from any rational person who has been trained in the law. Thus, the only explanation for such conduct is that Mr. Freedman is deliberately pursuing a course whereby he desires to use contumacious and contemptuous conduct as a basis to delay completion of this trial by reason of this Court having to impose criminal sanction commensurate with the magnitude of his breach of professional conduct. Though I find that his conduct was deliberate, willful, and constitutes a contempt in the actual presence of the court and in violation of Rule 42(a) of the Federal Rules of Criminal Procedure, in this instance I refuse to impose the type of sanction which would be permissible, an additional criminal sentence, because it would further delay this trial. I therefore am imposing on Mr. Freedman a fine in the amount of five hundred dollars ($500.00). It is imposed with the full awareness that the fine should bear some reasonable relation to the nature and gravity of the contumacious conduct. [*U. S. v. Conole*, 365 F.2d 306, 308 (3d Cir. 1966)].

BY THE COURT:
/s/ A. Leon Higginbotham, Jr., J.

### ORDER, FINDINGS AND FINE OF CONTEMPT

On the afternoon of Tuesday, November 9, 1976, Abraham E. Freedman, Esquire, as counsel for one of the defendants in the above-captioned case, deliberately violated the rulings of the Court as noted in the attached Memorandum and at pp. 6518 to 6532 of the Notes of Testimony. Such deliberate and willful conduct constituted contempt in the actual presence of the Court and was in violation of Rule 42(a) of the Federal Rules of Criminal Procedure. He is fined five hundred dollars ($500.00) and required to pay the fine to the Clerk of Court within seven days.

BY THE COURT:
/s/ A. Leon Higginbotham, Jr., J.