In re Jacob J. GORDON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 78–1408.

United States Court of Appeals,
First Circuit.

Argued Jan. 2, 1979.
Decided Feb. 23, 1979.

**1216**

Stephen F. Gordon, Boston, Mass., by appointment of the Court, for appellant.

Robert B. Collings, First Asst. U. S. Atty., Chief, Criminal Division, Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal from the summary imposition of a criminal contempt citation. 18 U.S.C. § 401; F.R.Crim.P. 42(a). Appellant challenges the conviction on four grounds: his conduct did not amount to criminal contempt; the use of summary procedure was inappropriate; the citation entered of record is technically defective; and, the trial judge was required to recuse himself from adjudicating the contempt. We affirm.

Appellant appeared pro se before the trial court pursuant to a probation violation warrant relating to a sentence imposed by the same trial judge two years earlier. When asked whether or not he had received notice of the alleged probation violation, appellant replied with the vituperous dissertation set out in the margin.[1] After allowing appellant to expound further about the ease with which the government could have served the probation violation warrant on him and the reasonableness of forgetting past transgressions in order to allow appellant to run in the 1980 presidential race, the court ascertained that appellant remained unable to pay the fine which accompanied the probation under consideration. The court then informed appellant that he had committed criminal contempt, an action which complicated appellant's request that the court forego further sanctions relating to the original sentence. After further discussion with appellant, the court dismissed the probation violation for lack of notice and sentenced appellant to sixty days imprisonment for contempt, to be served after completion of existing sentences.

Appellant's first, and most meritorious, argument is that the speech set out in the margin did not amount to criminal contempt. We have no difficulty concluding that appellant's conduct amounted to an outrageous affront to the dignity of the court, both personally and as an institution and embodiment of the law. *See Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). To amount to criminal contempt, however, insult must go beyond affront and in some way obstruct the proceedings or threaten the dispassionate administration of justice. 18 U.S.C. § 401; *Offutt v. United States, supra; In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972); *United States v. Seale*, 461 F.2d 345, 369–71 (7th Cir. 1972). Although the line between insult and obstruction is difficult to discern, there is a point at which mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice. *United States v. Seale, supra* at 370. Although we agree with the trial court that this case

1. "MR. GORDON: Your Honor, I received no papers, no notice of any kind. This probation, which I allege was illegal, and which was imposed for political reasons—I think we've been through that.

THE COURT: Oh, we certainly have, we certainly have.

Let's skip over that and get around to whether you have a copy, now, of the probation notice?

MR. GORDON: No, I have not. I am stating for the record, so there will be no question about it, this is a continuation of the same use of the Federal Court in a criminal misuse and abuse of the judicial process and continuing thing, because, your Honor, you, Mr. Lawyer, criminally tampered with the presidential election in 1976.

THE COURT: I remember that. I caused you to be in jail.

MR. GORDON: Yes, you politically had me arrested while I was campaigning in New Hampshire for the specific reason of removing me from the presidential campaign.

Now, I stated for the record, you may have the guns to hold me at the moment, and you do, in this ongoing criminal misuse and abuse of the judicial process, but I think, your Honor, history may show that things may change.

Now, the point is that I do not recognize, and I never recognized the totally corrupt flim flam kangaroo court proceedings that took place in 1975. My rights were totally, criminally violated. This Court engaged in an absolutely flagrant, outrageous, vicious criminal misuse and abuse of the judicial process. But you did something, your Honor, which is going to go down in history. You are the first lawyer who criminally tampered and rigged a presidential election, and that issue isn't settled yet. I think you are going to find within the next few months that issue is going to be tried in certain courts. But getting back to this probation—

THE COURT: Yes, please do."

presented the option to "consider [appellant] a harmless nut and forget it",[2] we think appellant's conduct was sufficient to sustain a contempt conviction.

■ We base this view on the following analysis. Appellant's conduct was clearly misbehavior in the sense used in the contempt statute, 18 U.S.C. § 401. It was inappropriate to the role assigned a pro se litigant in a court proceeding. *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). Although an advocate has the right to present his case with zeal, *Offutt v. United States, supra*, he should speak with "relevance and moderation". *Sacher v. United States, supra* at 9, 72 S.Ct. 451. The outburst involved here was neither relevant nor moderate. It was misbehavior. Moreover, the obstruction involved was material. We agree with the Seventh Circuit that "if a not insubstantial delay is entirely unnecessary and the misconduct serves . . . solely to vent the speaker's spleen, the requisite obstruction would be present." *United States v. Seale, supra* at 370. Appellant's conduct caused delay both in the time involved in delivery of his oration and in the time necessary thereafter to get the hearing back on the track. As a result of the outburst and subsequent haggling, the hearing became as much a contempt proceeding as a probation revocation. Contrary to appellant's arguments, these results following from the mere use of contemptuous words can support a contempt conviction. *See In re Dellinger*, 370 F.Supp. 1304, 1320 & 1337–38 (N.D.Ill.1973), *aff'd*, 502 F.2d 813, 815–16 (7th Cir. 1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).[3]

■ Appellant's next argument is that the summary proceeding envisioned by F.R.

Crim.P. 42(a) may not be used except to forestall violent misconduct that will otherwise bring the proceedings to a halt. We disagree. In *Sacher v. United States, supra*, the Court held that "summary" need not necessarily mean "immediate". If the trial court, in its discretion, decides to weather the storm of misconduct, such a decision does not negate the power to impose summary punishment at the end of the proceeding. Indeed, to force the court to act immediately or not at all would work against the policy of distinguishing between true misconduct and conduct that merely angers the trial court. Moreover, the proceeding involved here was not a lengthy trial in which contempt was imposed days or weeks after the offending conduct. At most, two minutes passed between appellant's outburst and the first discussion of contempt. Thus, the imposition was summary in the sense of "immediate". Finally, appellant's citation of *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), for the proposition that summary proceedings are improper if delayed until the end of trial comes perilously close to misrepresenting the law. That case says merely that due process is denied if summary proceedings are used at the close of trial without notice specifying the offending conduct and a brief right to be heard. *Id.* at 500 n. 9, 94 S.Ct. 2697. Here the trial court discussed the contempt problem with appellant and allowed appellant to speak to the issue. In sum, this was a case of contemptuous conduct occurring in the presence of the court and justifying summary procedure after a few minutes deliberation. *See* F.R.Crim.P. 42(a).

■ Appellant's last two arguments deserve short shrift. We do not read *United States v. Marshall*, 451 F.2d 372 (9th Cir.

---

**2.** The court stated in full: "I have two choices, Mr. Gordon. I have either to take you seriously, hold you in contempt and put you in jail for a heck of a lot longer, or consider you a harmless nut and forget it. I'm somewhat inclined to do the latter, but I have to give it some thought."

**3.** We add, for the sake of thoroughness, that we reject appellant's argument that a warning

was required before contempt could be imposed. This was self-noticing conduct. *See United States v. Seale, supra*, 461 F.2d at 366. Nor do we have any trouble finding adequate *mens rea* to obstruct; this was an open declaration of war on the court's authority. Thus, we need not decide whether specific intent is required in all cases. *Cf. United States v. Seale, supra* at 367.

1971), as standing for the proposition that a transcript citation can never adequately specify the facts constituting contempt as required by Rule 42(a). That case involved a citation to the entire record of a lengthy trial. We think that when words speak for themselves, a reference to the transcript page containing those words is sufficient. *See* 3 Wright, Federal Practice and Procedure § 708. Finally, after a review of the transcript, we are convinced that the trial judge was in no way "personally embroiled" in the contempt and therefore was not required to recuse himself from trial thereof. *See Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). In this regard, we reproduce appellant's parting words at the hearing:

"MR. GORDON: Your Honor, can I say one thing?

THE COURT: Yes.

MR. GORDON: You have more forebearance than I.

THE COURT: I sure do."

*Affirmed.*