**In re Robert T. GUSTAFSON, Esquire.**

No. 78–3732.

United States Court of Appeals,
Ninth Circuit.

May 30, 1980.

Robert T. Gustafson, Chula Vista, Cal., for appellant.

Judith S. Feigin, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Judith S. Feigin, Asst. U. S. Atty. (argued), San Diego, Cal., for appellee.

Before ELY, WRIGHT and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

This appeal presents the issue of when a court may issue a summary contempt order against a lawyer for conduct and remarks in his closing argument to the jury. We hold that while the defendant-lawyer's remarks in this case may have been contemptuous under 18 U.S.C. § 401,[1] summary disposition under Fed.R.Crim.P. 42(a) was improper and the court should instead have proceeded under Rule 42(b).

Robert Gustafson represented a defendant in a complex conspiracy case. He read his closing argument to the jury from a prepared text. He read it so fast that several times the court was forced to request that he slow down so that the court reporter could transcribe the proceedings. The court was unsuccessful, and eventually it directed the reporter to stop stenotyping and rely, instead, on a tape recorder for transcription.

On a number of occasions during Gustafson's argument the government raised and the court sustained objections to improper statements.

At the close of Gustafson's argument, the following exchange occurred:

[GUSTAFSON]: Now I must close, but before I do, I want you to know that Julio Zamora feels strongly about this case and his prayers have been that you will render a just and merciful verdict. For his wife and his children, too—

MRS. WITTMAN: Objection, your honor—

THE COURT: Mr. Gustafson—you cannot, ladies and gentlemen, base a verdict based on any sympathy whatsoever. The case, and the verdict you render must be based on the facts and only the facts, nothing else.

MR. GUSTAFSON: I was just trying to say, your honor, and I'd like to have a ruling on it—for his wife and his two children, too—

MRS. WITTMAN: Same objection, your honor.

THE COURT: That has nothing to do with it. His wife, his two children, nothing. It's the facts of the case.

MR. GUSTAFSON: Thank you. Ladies and gentlemen of the jury, I have just presented you, or you have been presented, with an example of the opera-

---

1.  18 U.S.C. § 401 provides in pertinent part:
    A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

tion between the bench and the prosecutor in quashing and quelling this evidence of a defense counsel trying to do his level best for his client, and I am going to have to rely upon you to give him every benefit of every doubt to my client, despite those efforts.

Thank you, and I hope you have a Merry Christmas.

Following Gustafson's final remark, the court excused the jury and recessed the trial for the day. After the jury left the courtroom, the court summarily held Gustafson in contempt and imposed a fine of $250. Thereafter the court filed a certificate of contempt pursuant to Rule 42(a).

Criminal contempts are divided into two classes: direct contempts, which occur in the presence of the court, and indirect contempts, which occur outside the presence of the court. *See United States v. Marshall,* 451 F.2d 372, 373–74 (9th Cir. 1971). A narrowly limited class of direct contempts may be punished under the summary procedures of Rule 42(a). Most direct contempts, however, and all contempts occurring outside the presence of the court, must · be disposed of in accordance with the notice and hearing requirements of Rule 42(b). 3 Wright, Federal Practice and Procedure, § 709 at 171–72.

Fed.R.Crim.P. 42 provides as follows:

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

■ On its face, Rule 42(a) establishes just two prerequisites to imposition of summary punishment, both relating to the direct nature of the contempt. This rule, however, is not read literally to mean that the occurrence of a contemptuous act in the actual presence of the court is the only prerequisite to exercise of the summary contempt power. *See* 3 Wright, Federal Practice and Procedure, § 707 at 165. Both the Supreme Court and the circuit courts of appeal have emphasized that summary contempt is reserved for " 'exceptional circumstances,' . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965). *See, e. g., In re Weeks,* 570 F.2d 244, 246 (8th Cir. 1978); *United States v. Mars,* 551 F.2d 711, 714 (6th Cir. 1977); *In re Allis,* 531 F.2d 1391, 1392 (9th Cir.), *cert. denied,* 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976); *United States v. Delahanty,* 488 F.2d 396, 398 (6th Cir. 1973). Moreover, because summary contempt fills "the need for immediate penal vindication of the dignity of the court . . .," *Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925), it is confined to "un-

usual situations . . . where instant action is necessary to protect the judicial institution itself." *Harris v. United States, supra,* 382 U.S. at 167, 86 S.Ct. at 356. *See Johnson v. Mississippi,* 403 U.S. 212, 214, 91 S.Ct. 1778, 1779, 29 L.Ed.2d 423 (1971); *Schleper v. Ford Motor Co.,* 585 F.2d 1367, 1371 (8th Cir. 1978); *United States v. Abascal,* 509 F.2d 752, 756 (9th Cir.), *cert. denied,* 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975); *United States v. Snider,* 502 F.2d 645, 657 (4th Cir. 1974); *Jessup v. Clark,* 490 F.2d 1068, 1071 (3d Cir. 1973); *United States v. Peterson,* 456 F.2d 1135, 1139 (10th Cir. 1972).

In *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), the Supreme Court outlined the exceptional circumstances in which a court may properly impose summary contempt. *Wilson* involved the orderly refusal of two witnesses to testify at trial even after having been offered immunity from prosecution under 18 U.S.C. §§ 6002–6003. After a warning from the trial judge that they would be held in contempt if they did not comply with the court's order to testify, the witnesses persisted in their refusals and were summarily held in contempt. The Court determined that the witnesses' contemptuous refusals to testify constituted a literal "breakdown" in the prosecution's case, and that summary contempt was therefore appropriate:

> The face-to-face refusal to comply with the court's order itself constituted an affront to the court, *and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, summary contempt must be available to vindicate the authority of the court* as well as to provide the recalcitrant witness with some incentive to testify.

*Id.* at 316, 95 S.Ct. at 1806 (emphasis added) (footnote omitted).

In holding that summary contempt was appropriate, the Court in *Wilson* distinguished the case before it from *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). In *Harris,* a witness before a grand jury refused to answer certain questions after a grant of immunity under 18 U.S.C. § 6002. The witness was then brought before a district court judge and summarily held in contempt for refusing to answer the same questions.[2] As *Wilson* noted, summary contempt was not appropriate in *Harris* because there was "no compelling reason for an immediate remedy," *Wilson, supra,* 421 U.S. at 318, 95 S.Ct. at 1807:

> [N]othing in this case indicates that petitioner's refusal was such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures, was necessary.

*Harris, supra,* 382 U.S. at 165, 86 S.Ct. at 354 (citation omitted).

In *Harris,* the Court concluded that summary action was not necessary because "swiftness was not a prerequisite of justice . . . . Delay necessary for a hearing would not imperil the grand jury proceedings." *Id.* at 164, 86 S.Ct. at 354. In *Wilson,* however, the Court determined that time *was* of the essence and summary action was appropriate, because the delay necessary for a hearing pursuant to Rule 42(b) would have imperiled the ongoing trial. *Wilson* noted that although a grand jury can easily suspend action on one of the numerous cases before it at any one time while a 42(b) proceeding is held, a trial court cannot be expected to suspend action and then reconvene at a later time:

> In a trial, the court, the parties, witnesses, and jurors are assembled in the expectation that it will proceed as scheduled. . . . Delay under Rule 42(b) may be

<hr/>

**2.** The proceeding in *Harris* was considered a grand jury proceeding even though the witness was brought before a district court because the *Harris* Court determined that the witness was asked the same questions before the district court only to have the refusal to testify "committed in the actual presence of the court" for the purposes of Rule 42(a).

substantial, and all essential participants in the trial may no longer be readily available when a trial reconvenes.

*Wilson, supra,* 421 U.S. at 318–19, 95 S.Ct. at 1808.

The Court's express effort in *Wilson* to distinguish the case before it from *Harris* clarifies the rationale behind the result in *Wilson.* The contempt in *Wilson* was summarily punishable because there was a compelling reason for an immediate remedy. Swiftness *was* a prerequisite of justice because the witnesses' refusal to testify constituted an " 'open, serious threat to orderly procedure.' " *Wilson, supra,* 421 U.S. at 319, 95 S.Ct. at 1808, *citing Harris, supra,* 382 U.S. at 165, 86 S.Ct. at 354. In that situation, summary contempt was a necessary and appropriate means by which the trial judge could act "swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial." *Wilson, supra,* 421 U.S. at 319, 95 S.Ct. at 1808.[3]

■ In situations such as that presented in *Harris,* "[w]here time is not of the essence . . . the provisions of Rule 42(b) may be more appropriate to deal with contemptuous conduct." *Wilson, supra,* 421 U.S. at 319, 95 S.Ct. at 1808. Like *Harris,* the case before this court involves a situation where time was not of the essence. Unlike the refusal to testify in *Wilson* which caused a literal "breakdown" in the

prosecution, Gustafson's remark in no way threatened the orderly procedure of the trial. Gustafson made his statement, wished the jury a Merry Christmas, and the court excused the jury for the day as it would have normally had Gustafson not concluded his summation to the jury as he did. Nor would a Rule 42(b) hearing have imperiled the trial. Because the contempt citation in *Wilson* was partially a means of motivating the witness to testify, it was necessary that the contempt be dealt with, one way or the other, prior to the continuation of the trial. In the instant case, however, there was no need to contend with the conduct at issue prior to the conclusion of the trial. A Rule 42(b) hearing could have been, and should have been, held at some time subsequent to the trial.

■ In reaching this conclusion, we do not hold that summary contempt is justified only where there has been a "disorderly or obstreperous interference" with the conduct of a trial. *Wilson, supra,* 421 U.S. at 314, 95 S.Ct. at 1805. As *Wilson* notes, "Rule 42(a) was never intended to be limited to situations where a witness uses scurrilous language, or threatens or creates overt physical disorder and thereby disrupts a trial." *Id.* at 315, 95 S.Ct. at 1806. What we do hold, as we must under *Wilson,* is that summary contempt is appropriate only where there is a compelling need for immediate action. As the Fifth Circuit noted in *United States v. Brannon,* 546 F.2d 1242, 1248 (5th Cir. 1977) (footnotes omitted):

**3.** The dissent cites *Wilson* for the proposition that "[a]ll that is necessary is that the judge certify that he 'saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court.' " *Id.* at 315, 95 S.Ct. at 1806. While this sentence, standing alone, appears to have the meaning ascribed to it by the dissent, it has a significantly different meaning when read in context. The Court was not making an absolute pronouncement; rather, it was responding to an argument raised in the previous sentence, where it had stated: "Rule 42(a) was never intended to be limited to situations where a witness uses scurrilous language, or threatens or creates overt physical disorder and thereby disrupts a trial." *Id.* The context reveals that the Court's broad language was intended only to indicate its rejection of the view that scurri-

lous language or physical disorder was required. It is also clear from the remainder of the *Wilson* opinion that the Court did not mean that contemptuous conduct in the presence of the court is the sole requirement for the imposition of summary contempt. If it were, the Court in *Wilson* would not have considered it necessary to say anything more than that the refusals to testify were "in the context of a face-to-face encounter between the judge and respondents." *Id.* Moreover, if it were not necessary to further justify the need for summary treatment, the Court would not have distinguished *Harris* on the ground that trial courts, unlike grand juries, would be disrupted by a 42(b) proceeding. Kuhns, The Summary Contempt Power, 88 Yale L.J. 41, 89 (1978).

The teaching of *Wilson* is simply that Rule 42(a) is a rule of necessity and its application is "narrowly limited." It fills "the need for immediate penal vindication of the dignity of the court" and permits the court to act swiftly to stop conduct which amounts to intentional obstruction of court proceedings. Thus, the power to impose summary contempt exists only where there is "compelling reason for an immediate remedy," and where there is no such need its use is inappropriate.

▪ In factual situations involving disrespectful conduct on the part of attorneys or pro se parties, courts have applied summary contempt only after a finding of "material obstruction or disruption." *See, e. g., Gordon v. United States,*[4] 592 F.2d 1215 (1st Cir.), *cert. denied,* 441 U.S. 912, 99 S.Ct. 2011, 60 L.Ed.2d 384 (1979); *United States v. Seale,* 461 F.2d 345 (7th Cir. 1972). *See generally In re McConnell,* 370 U.S. 230, 234, 235–36, 82 S.Ct. 1288, 1291, 1292, 8 L.Ed.2d 434 (1962). While "material obstruction" is a concept not easily defined, the case law indicates that relevant factors include the reasonably expected reactions of those in the courtroom, the manner in which the remarks are delivered, the delay in the proceedings caused by a disrespectful

outburst, and the failure to heed explicit directives of the court. *See, e. g., Gordon v. United States, supra,* 592 F.2d at 1218; *In re Dellinger,* 502 F.2d 813, 815 (7th Cir. 1974), *cert. denied sub nom. Dellinger v. United States,* 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975); *United States v. Seale, supra,* 461 F.2d at 370–71. The requirement of a "material obstruction" prior to summary contempt is consistent with *Wilson* because there can be no "compelling reason for immediate action" in a case involving attorney misconduct unless there has been such an obstruction.[5]

▪ The requirement of a "material obstruction" is also consistent, as it must be, with the statutory basis for the summary contempt power. Rule 42(a) does not give the courts the substantive power to impose punishment for criminal contempt. It is merely a rule of procedure that guides the courts in implementing the statutory authority for criminal contempt contained in 18 U.S.C. § 401. Consequently, it is necessary, in defining the circumstances that justify summary contempt, to look beyond the rule to the statute and to the case law interpreting that statute. The case law indicates that no conduct is contemptuous within the meaning of 18 U.S.C. § 401 unless there has been a "material obstruction

---

**4.** The dissent suggests that we have improperly relied on *Gordon* for the proposition that a "material obstruction" is a prerequisite to summary contempt. While the dissent correctly observes that *Gordon's* discussion of summary proceedings does not mention "material obstruction," the remainder of the dissent's argument is incorrect. *Gordon* presumes that "material obstruction" is a prerequisite to all criminal contempts. In the absence of a "material obstruction," the challenged remarks or conduct would not even be contemptuous, much less summarily punishable pursuant to a summary contempt provision.

**5.** If the court waits until the end of a proceeding to impose summary punishment without citing the party for contempt at the time of the material obstruction, summary contempt is not justified because there is no longer a compelling reason for immediate action. *See United States v. Brannon, supra,* 546 F.2d at 1249. *But see Commonwealth of Penna. v. Local Un-*

*ion 542,* 552 F.2d 498, 512, *cert. denied, sub nom. Freedman v. Higginbotham,* 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977). Summary contempt is justified, however, where the court cites a party for contempt under Rule 42(a) at the time of the obstruction but waits until the end of the proceeding to impose summary punishment. *Sacher v. United States,* 343 U.S. 1, 10–11, 72 S.Ct. 451, 456, 96 L.Ed. 717 (1952) ("In this case counsel repeatedly were warned that their conduct was regarded as contemptuous. No claim can be made that the judge awaited the close of the trial to pounce upon them for some offense unnoted at the time it occurred."). Under this rule the judge is empowered to use swift action to eliminate the obstruction but also has the time to make a well considered judgment on the sentence instead of pronouncing it "while smarting under the irritation of the contemptuous act . . ." *Id.* at 11, 72 S.Ct. at 456.

or disruption." [6] *See Gordon v. United States, supra,* 592 F.2d at 1218; *United States ex rel. Robson v. Oliver,* 470 F.2d 10, 12 (7th Cir. 1972); *United States v. Seale, supra,* 461 F.2d at 369–71. *See generally In re McConnell, supra,* 370 U.S. at 236, 82 S.Ct. at 1292; *Sacher v. United States,* 343 U.S. at 5, 72 S.Ct. at 453. The "material obstruction" requirement, then, is not a prerequisite only for contempts that are summarily punishable under Rule 42(a); it is a prerequisite to all criminal contempts. What distinguishes contempt that is summarily punishable from contempt that is punishable only after a Rule 42(b) hearing is both the occurrence of the conduct in the actual presence of the court and the compelling need for an immediate remedy. *Compare Gordon v. United States, supra* (appellant's oration materially obstructed proceedings in a way that required immediate action) *with Fernos-Lopez v. United States Dist. Ct.,* 599 F.2d 1087 (1st Cir. 1979) (bankruptcy proceeding not obstructed in any way that required summary action).

It is neither necessary nor appropriate for us to decide whether Gustafson's remarks were sufficiently obstructive to constitute contempt within the meaning of 18 U.S.C. § 401. Whether or not Gustafson's remarks constituted a "material obstruction," his conduct was not punishable under Rule 42(a) because there was no compelling need for immediate action. In those cases of attorney or pro se party misconduct in which courts have applied Rule 42(a), there was a compelling need for immediate punishment because the conduct at issue had caused "not insubstantial" and "entirely unnecessary" delays which substantially disrupted the trial. *See, e. g., Gordon v. United States, supra; Commonwealth of Penna. v. Local Union 542,* 552 F.2d 498, *cert. denied sub nom. Freedman v. Higginbotham,* 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977); *In re Dellinger, supra; United States v. Proffitt,* 498 F.2d 1124 (3rd Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *United States v. Seale, supra. See generally Sacher v. United States, supra,* 343 U.S. at 11, 72 S.Ct. at 456. Obviously, there was no need in the case before us to use an immediate remedy to restore the orderly process of the trial. The fact that the trial ended for the day without incident and without delay after Gustafson concluded the challenged remarks in-

6. The implicit suggestion of the dissent that offensive or disrespectful language is per se contemptuous is incorrect. Affronts to the dignity of the court or to a judge's sense of dignity do not automatically constitute criminal contempt. As the court noted in *Gordon,* on which the dissent relies, "[t]o amount to criminal contempt . . . insult must go beyond affront and. in some way obstruct the proceedings or threaten the dispassionate administration of justice." *Gordon v. United States, supra,* 592 F.2d at 1217, *citing* 18 U.S.C. § 401; *In re Little,* 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972); *Offutt v. United States,* 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *United States v. Seale, supra,* 461 F.2d at 369–71. In requiring a finding of "material obstruction" as a prerequisite to criminal contempt, we do not, as the dissent suggests, add a requirement that is inconsistent with case law. This requirement arises directly from the statute which underlies Rule 42(a) and the case law interpreting that statute and its predecessors. *See In re Little, supra,* 404 U.S. at 555, 92 S.Ct. at 660 (statement of pro se petitioner in closing remarks that court was biased and had prejudged the case was not contemptuous: "There is no indication, and the State does not argue, that petitioner's statements were uttered in a boisterous tone or in any wise actually disrupted the court proceeding. Therefore, 'The vehemence of the language used is not alone the measure of the power to punish for contempt. The fire which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil . . . .' "); *In re McConnell, supra,* 370 U.S. at 234, 82 S.Ct. at 1291 (persistent efforts by petitioner to lay foundation for offers of proof were not sufficiently disruptive of trial court's business to constitute requisite obstruction within the meaning of 18 U.S.C. § 401: "Thus the question . . . comes down to whether it can 'clearly be shown' . . . that the petitioner's statements . . . actually obstructed the district judge in 'the performance of judicial duty.' "). The dissent's failure even to consider the underlying statute, 18 U.S.C. § 401, may explain its continued reliance on the literal language of Rule 42(a).

dicates that those remarks never disrupted the orderly process of the trial. Moreover, a mere probability or likelihood that Gustafson's remarks would disrupt the trial would not justify summary contempt. *See In re Little*, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972).

This court has recognized the importance of strict adherence to the procedural safeguards established in Rule 42(a) " 'lest the drastic power authorized escape the permissible limits of reason and fairness.' " *United States v. Marshall, supra*, 451 F.2d at 374. The recitation of facts in the certificate of contempt that is expressly required by Rule 42(a) is a critically important procedural safeguard because it provides the sole record for appellate review. *United States v. Marshall, supra*, 451 F.2d at 374–75. As the *Marshall* court noted:

> "[I]nformed appellate review" is possible only if the facts are stated in sufficient detail for the appellate court to determine whether the conduct upon which the conviction rests was contemptuous, factually and legally; whether it was of such character, and occurred in such circumstances, as to permit summary conviction under Rule 42(a), and because Rule 42 sentences are subject to appellate review and revision, whether the conduct relied upon justified the sentence imposed.

*Id.* at 375 (footnotes omitted).

■ The certificate of contempt in the case before us made general reference to Gustafson's speed of delivery and improper arguments as grounds supporting the contempt order. These references were conclusionary and general and therefore insufficient to uphold the contempt citation. *See id.* at 375. While the certificate did specifically set forth Gustafson's remarks at the close of his argument, it did not recite facts demonstrating a compelling need for immediate action, and it therefore failed to provide this court with the necessary basis for a determination whether the challenged conduct "occurred in such circumstances as to permit summary conviction under Rule

42(a) . . . .." *Id.* at 375 (footnote omitted). Because it failed to recite such facts, the certificate was insufficient to uphold summary contempt in this case.

■ The due process guarantees of notice and hearing are fundamental to our system of justice. "Indeed, we have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.' " *Groppi v. Leslie*, 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972). The importance of the due process guarantees dictates that courts dispense with notice and hearing only where the protection of the judicial institution itself so requires. It is for this reason, and because of the possibility of abuse, that courts have strictly adhered to the principle that the power to punish for contempt is limited to "[t]he least possible power adequate to the end proposed." *Anderson v. Dunn*, 6 Wheat. 204, 231, 5 L.Ed. 242 (1821). *Accord, United States v. Wilson, supra*, 421 U.S. at 319, 95 S.Ct. at 1808; *Harris v. United States, supra*, 382 U.S. at 165, 86 S.Ct. at 354; *United States v. Abascal, supra*, 509 F.2d at 756.

Our holding today does not strip trial court judges of the power to deal effectively with offensive, disrespectful, and disruptive language or gestures. It merely requires a trial judge to assess the severity of the obstruction and to use the "least possible power adequate to the end proposed." Where immediate punishment is not warranted, a trial judge can and should invoke the notice and hearing provisions of Rule 42(b). Where, however, language or gestures materially obstruct the proceedings in a way that necessitates immediate treatment, a trial court judge is fully empowered under our holding to invoke the summary procedures of Rule 42(a).

Because Gustafson's remarks did not disrupt the course of the trial, there was no need to use the summary contempt power as a means of restoring order to the pro-

ceeding. Nor was this one of the exceptional situations where summary action was the least possible power that would serve to vindicate the judicial institution itself. The dignity and authority of the trial court could have been vindicated easily and effectively by an order of the court requiring Gustafson to show cause at a later date as to why he should not be held in contempt.[7]

The government here has not demonstrated any necessity for the more drastic procedure of summary contempt. In the absence of any compelling need for an immediate remedy, the appropriate method for dealing with Gustafson's conduct was pursuant to the notice and hearing provisions of Rule 42(b). For the foregoing reasons, the summary holding under Rule 42(a) is REVERSED.

EUGENE A. WRIGHT, Circuit Judge, dissenting:

With due respect for the views of my colleagues, I must dissent. This is a classic case of willful disobedience by an experienced trial lawyer, followed by insulting and vicious accusations of judicial misconduct and collusion with a prosecutor.

My review of the facts leads me to conclude that the district court properly invoked the summary criminal contempt provisions of Rule 42(a) of the Federal Rules of Criminal Procedure.

Attorney Gustafson read his closing argument to the jury from a prepared text, and was reading so rapidly that the court was forced to ask counsel to slow down so that the reporter could record the argument. Refusing to heed the admonition, Gustafson continued in a manner that forced the court to interrupt him 19 times to request that he slow the speed of his delivery. These requests were ignored, and the court eventually ordered the reporter to utilize a tape recorder for the balance of the argument.

Repeatedly during Gustafson's closing argument, the government objected to his improper statements. The court sustained the objections, and admonished Gustafson to confine his argument to the facts. The argument concluded with the colloquy quoted by the majority at page 2, ante.

I view this conduct as willful and deliberate defiance of the court's orders. There is absolutely no justification in the record for the behavior, particularly the suggestion to the jury that the court and the prosecution had conspired to prevent or impede counsel in the defense of his client.

As I shall explain, I believe that Gustafson's conduct was contemptuous. I cannot subscribe to the doubts of the majority opinion on that score and the observation that the remarks "may have been contemptuous."

Further, I am satisfied that the contempt was punishable summarily.

1. *The Conduct was Contemptuous*

In *In Re Buckley*, 10 Cal.3d 237, 110 Cal.Rptr. 121, 514 P.2d 1201, Anno. 68 ALR3d 248 (1973), *cert. den., Buckley v. California*, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974), the California Supreme Court recognized that accusations of judicial bias are contemptuous on their face and summarily punishable:

> [A]n attorney commits a direct contempt when he impugns the integrity of the court by statements made in open court
> . 527 ..
> We hold here that when petitioner's argument turned from advocacy to insult, the trial court was acting properly in holding him in contempt.

110 Cal.Rptr. at pp. 127, 133, 514 P.2d at pp. 1207, 1213. The *Buckley* court relied on the earlier case of *Hume v. Superior Court*, 17 Cal.2d 506, 110 P.2d 669 (1941), in which the

---

7. The dissent suggests that summary contempt was justified as a means of countering any inference of guilt that might have been drawn had the court failed to act. This argument ignores the facts. Significantly, the jury was not present in the courtroom at the time the court held Gustafson summarily in contempt.

California Supreme Court upheld a finding of contempt based on an attorney's allegations that the judge was biased in favor of the prosecution:

> said statements were contemptuous in that they reflected upon the integrity of the trial court and the judge thereof, imputing collusion of the judge with the attorney-general . . ..

110 P.2d at pp. 673–674. A similar charge of collusion served as the basis for the instant finding of contempt by Gustafson.

In *Alexander v. Sharpe*, 245 A.2d 279 (Me.1968), the Supreme Judicial Court of Maine reached a similar conclusion. Responding to a ruling of the trial judge, an attorney said ,to the judge: "I think it demonstrates your prejudice without doubt." *Id.* at p. 281.

The appellate court commented:

Petitioner's accusation of prejudice was clearly an act of contempt of court. Its immediate and obvious results were to disrupt the trial, to inject in the minds of the jurors strong resentments incompatible with the dispassionate determination of the issues before them, and to deprive both plaintiff and defendant of an early resolution of their litigation. A more extended harm to be expected from such an accusation on the part of an officer of the court is a lessening of public respect for the bench, the bar and the judicial process.

*Id.* at p. 283. The court went on to quote with approval the order of the trial judge:

Trials are open to the public and what transpires in the courtroom is of public notice and concern. The jury, counsel, litigants, witnesses, court officers, representatives of the press and spectators are all observers of courtroom proceedings.

They hear and see trial action and carry a message to the public as to what might be expected by any litigant who seeks judgment in a court of law. The message they carry *is dependent upon a Judge's supervision in conducting a trial and counsel's conduct including his respect for and civility to a Court.* A member of the legal profession, above all others, should be sensitive to the respect a Judge is entitled to while performing his duties in a court of law and conduct himself accordingly.

*Id.* at p. 284. (Emphasis supplied). The accusation of prejudice which led to Gustafson's contempt is equally damaging to the integrity of the judicial system. It should be noted that the allegation of prejudice in *Alexander v. Sharpe, supra*, was made by plaintiff's attorney in a civil suit. More damaging to the public's view of our system of justice is an accusation of collusion between a judge and a prosecutor in a criminal case. Such an allegation reenforces the belief that American jails are filled with "political prisoners" who were denied fair trials.[8]

It is not the role of attorneys to lend support to such beliefs. Canon 8 of the Code of Professional Responsibility reads: "A Lawyer Should Assist in Improving the Legal System." Disciplinary Rule 8–102(B) provides: "A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."

There is no evidence to support Gustafson's accusation of collusion between judge and prosecutor. His violation of the Code of Professional Responsibility was so flagrant as to merit and to require the punishment imposed by the experienced trial judge. Anything short of a prompt contempt citation would only encourage fur-

---

8. Imputation of judicial bias was always regarded as contemptuous in England. *See* generally *Oswald on Contempt*, (1911) at 49–50. In one well-known English case the court declared:

> A libel upon a Court is a reflection upon the King, and telling the people that the adminis-

tration of justice is in weak or corrupt hands, that the fountain of justice itself is tainted, and consequently that judgments which stream out of that fountain must be impure and contaminated.

*R. v. Almon*, (1765), Wilm. 243, quoted in *Oswald, supra*, at 50.

ther erosion of the public's confidence in our judicial system.

Gustafson was not a novice attorney or recent admittee to the bar. He was admitted to practice law in California and before this court in 1963. He had been a Navy Judge Advocate for more than 15 years. Had he been a new, younger lawyer with limited experience, one might overlook his statements as those of an overzealous advocate. But such statements and conduct by an attorney of extensive experience are inexcusable, inappropriate and intolerable.

I disagree with the conclusion of the majority that Gustafson's conduct did not significantly impair the integrity of the proceedings or disrupt the processes of the court. His behavior required the court to stop the proceedings repeatedly and eventually to order the reporter to improvise with other measures.

Even more telling, however, is the fact that two of the codefendants in the principal case argued on appeal that Gustafson's remarks prejudiced their right to a fair trial. I observe that other parties and their counsel felt Gustafson's conduct affected the integrity of the proceedings.

### 2. *Rule 42(a) was Properly Invoked*

Read literally, Rule 42(a) sanctions summary punishment of criminal contempt when two requirements are met: (1) the contumacious behavior occurs in the presence of the court, and (2) the judge certifies that he saw or heard it. It affords protection when "the trial judge [must] . . . act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial." *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975).

The majority opinion significantly diminishes a trial judge's discretion by adding a third requirement to Rule 42(a). It holds contumacious behavior may not be summarily punished unless the behavior also constitutes a "material obstruction" of the court's

business under circumstances in which "time is of the essence." When the obstruction is not "material" or "time is not of the essence", then Rule 42(a) could not be invoked, says the majority opinion, even if the contemptuous conduct occurred in the judge's presence and in open court.

It is not our function to rewrite the Rules of Criminal Procedure when we believe we can improve upon the work of the draftsmen, any more than it is our business to rewrite a statute to improve upon congressional grammar or to provide a remedy not given or intended in the law. Justice Harlan commented on such attempts by appellate courts:

> What was said in *Ex parte Kearney*, 7 Wheat. 38, 45, [5 L.Ed. 391,] may be here repeated: "Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice."

*Ex parte Terry*, 128 U.S. 289, 309, 9 S.Ct. 77, 81, 32 L.Ed. 405 (1888).

### A. *The Draftsmen's Intent*

The majority's revision ignores the Advisory Committee's intent as to the scope of Rule 42(a). Its Note to subdivision (a) reads: "This rule is substantially a restatement of existing law, *Ex parte Terry*, [*supra*]; *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 [1925]." As recently as 1975, the Supreme Court so stated in *United States v. Wilson, supra*: "Rule 42 has consistently been recognized to be no more than a restatement of the law existing when the Rule was adopted . . .." 421 U.S. at 317, 95 S.Ct. at 1807.

The existing law to which we are referred by the Supreme Court and by the Advisory Committee contains nothing which even remotely suggests a judge's power to punish contempt in his presence is limited by a requirement that there be a

"material obstruction" when "time is of the essence." Justice Harlan, writing for the Court in *Ex parte Terry*, declared:

> "The power to commit or fine for contempt is essential to the existence of every court. Business cannot be conducted unless the court can suppress disturbances and the only means of doing that is by immediate punishment."

128 U.S. at 308, 9 S.Ct. at 81, quoting *State v. Woodfin*, 27 N.C. 199, 5 Iredells' Law 199 (1844).

In *Cooke v. United States, supra*, cited by the Advisory Committee and also by the *Wilson* Court, Chief Justice Taft thus defined summary contempt:

> To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law and the punishment imposed is due process of law.

267 U.S. at 534, 45 S.Ct. at 394. He said nothing to suggest a judge must hold a hearing unless the contumacious conduct causes a "material obstruction" when "time is of the essence." In Chief Justice Taft's view, time is always of the essence when the court's honor is impugned. I agree.

B. *United States v. Wilson*

The majority purports to find the "material obstruction" and "time is of the essence" requirement in *United States v. Wilson*. I believe the majority misinterprets that decision.

The Court states its holding clearly and succinctly in Part II of *Wilson*:

> Rule 42(a) was never intended to be limited to situations where a witness uses scurrilous language, or threatens or cre-

ates overt physical disorder and thereby disrupts a trial. *All that is necessary* is that the judge certify that he "saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."

421 U.S. at 315, 95 S.Ct. at 1806 (emphasis supplied). In Part IV, the Court acknowledges that (1) trial judges have the discretion to invoke summary proceedings in exceptional circumstances and (2) appellate courts may remedy abuses of that discretion:

> As with all power, the authority under Rule 42(a) to punish summarily can be abused; the courts of appeals, however, can deal with abuses of discretion without restricting the Rule in contradiction of its own express terms, and without unduly limiting the power of the trial judge to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial.

*Id.* at 319, 95 S.Ct. at 1808.

The majority's footnote 3 suggests I read those words out of context. I do say Parts II and IV constitute the core of the opinion. *Wilson* is divided into four sections. The first explains the facts. The second sets forth the rule of law. The third distinguishes an earlier case, and the fourth summarizes the holding.

The majority ignores Part II and the summary of the holding in Part IV, while relying heavily on Part III and dictum in Part IV. In Part III, the Court distinguished *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) by noting that the refusal to testify in *Harris* did not disrupt an ongoing trial, while in *Wilson* the trial was delayed. In Part IV, the Court prefaces its summary of the holding of the case with words of caution:

> Rule 42(a) provides an appropriate remedial tool to discourage witnesses from contumacious refusals to comply with lawful orders essential to prevent a breakdown of the proceedings. Where time is not of the essence, however, the

provisions of Rule 42(b) *may be* more appropriate to deal with contemptuous conduct. We adhere to the principle that only " '[t]he least possible power adequate to the end proposed" should be used in the contempt cases.

421 U.S. at 319, 95 S.Ct. at 1808 (emphasis supplied). Reading Part III together with the introductory language in Part IV, the majority extracts a new requirement: summary contempt is only available when the contumacious conduct causes a "material obstruction" at a point when "time is of the essence."

The majority cites *Wilson* out of context. How could it be said in Part II that Rule 42 is a mere codification of the *Terry* and *Cooke* cases if the Court was significantly modifying the Rule? If it meant to *require* the use of 42(b) when "time is not of the essence", why say that 42(b) *may be* more appropriate? If the Court really intended to declare a new rule of procedure, why would it do so in such an offhand fashion?

In essence, the majority opinion limits *Wilson* to its facts. It reads *Wilson* to allow a trial judge to hold a witness in contempt summarily when he refuses to testify because the trial court cannot otherwise continue. In all other circumstances, however, it would require the trial judge to implement the notice and hearing provisions of Rule 42(b). This interpretation ignores the Court's statement of law in Parts II and IV.

## C. *Case Law*

In *MacInnis v. United States*, 191 F.2d 157 (9th Cir. 1951), *cert. denied*, 342 U.S. 953, 72 S.Ct. 628, 96 L.Ed. 708 (1952) this court affirmed a judgment of summary contempt under 18 U.S.C. § 401 and Rule 42(a) for conduct similar to Gustafson's. A Roman Catholic priest was testifying in a criminal trial and the judge asked him: "Have you been recently subjected to medical treatment, Father?" 191 F.2d at 159. MacInnis's co-counsel objected to the ques-

tion. Attorney MacInnis also objected, and then addressed these comments to the court:

> I think you should cite yourself for misconduct. . . . I have never heard anything like that. You ought to be ashamed of yourself.

*Id.*

On the following day the judge declared MacInnis's conduct contemptuous, but he withheld the order of contempt until after the trial. Two months later, when the trial was over, he summarily held MacInnis in contempt under Rule 42(a).

On appeal, this court affirmed the contempt order. We stated:

> The act of addressing the court in open session with the statements "You should cite yourself for misconduct" and "You ought to be ashamed of yourself", unmodified, are, per se, contemptuous.

191 F.2d at 160. The court also held that the trial judge properly proceeded under Rule 42(a) even though the trial had already ended.

In my view, there is no way to reconcile this holding with the present majority opinion that requires a finding of "material obstruction when time is of the essence." Should the majority assert that the law of contempt was changed by the Supreme Court in *Wilson, supra*, it must also explain why the *Wilson* court never explicitly stated it was departing from established precedent, and why the *Wilson* court affirmatively cited such older contempt cases as *Cooke, supra*. *MacInnis* is still the law of this Circuit, and can only be overruled by the Supreme Court or by this court sitting en banc.

I note that in *United States v. Marshall*, 451 F.2d 372 (9th Cir., 1971), relied on by the majority, *MacInnis* is cited with approval. *Id.* at 377.

A review of post-*Wilson* decisions supports the conclusion that the majority's revision of Rule 42(a) is unfounded. In *Gordon v. United States*, 592 F.2d 1215 (1st Cir.), *cert. denied*, 441 U.S. 912, 99 S.Ct. 2011, 60 L.Ed.2d 384 (1979), the court of appeals upheld a summary contempt order against Gordon, who appeared pro se, for

his "vituperous dissertation" given in response to a question by the trial court. *Id.* at 1217. In its review of the propriety of summary proceedings, the court of appeals applied Rule 42(a) according to its plain terms. *Id.* It rejected Gordon's contention that Rule 42(a) must not be used unless the contumacious conduct brings the proceedings to a halt. *Id.* It held the trial judge could exercise his summary contempt power at the end of the trial:

> If the trial court, in its discretion, decides to weather the storm of misconduct, such a decision does not negate the power to impose summary punishment at the end of the proceeding. Indeed, to force the court to act immediately or not at all would work against the policy of distinguishing between true misconduct and conduct that merely angers the trial court.

*Id.* at 1218. Obviously, time is not of the essence after the conclusion of a trial.

The majority cites Gordon but ignores this language and takes other phrases out of context. It relies on *Gordon* for the proposition that the delay caused by Gordon's outburst amounted to a "material obstruction" justifying summary proceedings. The majority fails to indicate that it draws the "material obstruction" discussion from the *Gordon* court's analysis of whether Gordon's speech amounted to criminal contempt. *Id.* at 1217–18. The court's discussion of the propriety of the summary proceedings makes no mention of "material obstruction."

In a second decision relied on by the majority, *Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 552 F.2d 498 (3rd Cir.), *cert. denied sub nom., Freedman of Higginbotham*, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977), the court concluded the trial court properly invoked summary contempt procedures. The court found counsel's "flouting [the] trial judge's commands is the essence of obstructing the administration of justice" and thereby warranted summary proceedings. *Id.* at 509.

The court stated "to hold otherwise would be to strip trial judges of their power to supervise the proceedings before them, and to clothe counsel with the authority to conduct trials in whatever manner they deem appropriate." *Id.* As further evidence of counsel's "obstructiveness", the court noted that counsel's contumacious conduct resulted in a delay of the trial. *Id.*

While the court noted the delay, it did not intimate, as the majority suggests, that contemptuous conduct must cause a "material obstruction" before summary proceedings are appropriate. The *Local Union 542* decision holds merely that flouting a judge's orders is an obstruction of justice warranting invocation of summary contempt proceedings. *See United States v. Mars*, 551 F.2d 711 (6th Cir. 1977) (defendant's refusal to obey the district court's order constitutes an exceptional circumstance justifying summary conviction for contempt).

A recent Eighth Circuit decision, *Schleper v. Ford Motor Co., Auto Division*, 585 F.2d 1367 (8th Cir. 1978) counters any suggestion that *Wilson* restricts Rule 42(a). Citing *Wilson*, the *Schleper* court declared:

> Summary contempt proceedings are permissible only when the contumacious behavior is committed in the presence of the judge and known to him personally, requiring immediate corrective action to restore the authority and dignity of the court. *United States v. Wilson*, 421 U.S. 309, 315, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).

*Id.* at 1371.

Finally, no other post-*Wilson* authority forbids the exercise of Rule 42(a) in the face of vituperative and disruptive language. All recognize summary contempt is a powerful sanction to be exercised with discrimination. But no court disallows the use of summary proceedings in the absence of an abuse of discretion.

## D. Conclusion

While the courtroom still echoes with contemptuous language, a judge must act immediately or not at all if he is to reassert the court's authority and dignity. In the instant case, Gustafson's outrageous accusation of judicial collusion was ringing in the ears of all present in the courtroom. In the

court's judgment, inaction might have been deemed admission of judicial misconduct and collusion.

We need not attempt to imagine the myriad circumstances which might confront a trial judge. Trial judges of long service well know the unpredictable nature of courtroom life. Rule 42(a) is their most effective weapon in combating courtroom misconduct precisely because it is broad enough to encompass all possibilities. By attempting to restrict the Rule, the majority opinion short-sightedly removes this defensive armor from a judge's arsenal.

In light of the original intent of the draftsmen of Rule 42(a), *Wilson, supra,* and post-*Wilson* authority, I cannot subscribe to the majority's opinion and I respectfully dissent.